B 10 (Official Form 10) (12/08)

**UNITED STATES BANKRUPTCY COURT** Northern District of Illinois

**PROOF OF CLAIM**

Name of Debtor:
Grand Auto and Truck Center, Limited

Case Number:
09-43770

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Marlin Leasing Corporation

Name and address where notices should be sent:

Marlin Leasing Corporation
300 Fellowship Road
Mount Laurel, NJ 08054
Telephone number:
(888) 479-9111

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:**________
*(If known)*

Filed on: ________

Name and address where payment should be sent (if different from above):

Same as above

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 121,879.75

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

✓ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Leased Equipment
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 4888

**3a. Debtor may have scheduled account as:** 1-201488-8
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ✓ Other
**Describe:** UCC-1 see attached

**Value of Property:$**________ **Annual Interest Rate**___%

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any: $**________ **Basis for perfection:** ________

**Amount of Secured Claim: $** 80,000.00 **Amount Unsecured: $** 41,879.75

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$________

**Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

Date: 12/15/2009

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

Amarilys Perez, Bankruptcy Paralegal

[signature]

FOR COURT USE ONLY

FILED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
DEC 2 8 2009
KENNETH S. GARDNER, CLERK

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
**Phone: (800) 331-3282 Fax: (818) 662-4141**

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

**UCC Direct Services**
**P.O. Box 29071**
**Glendale, CA 91209-9071**

**12961413**

**IL, Secretary of State**

**UCC Direct Services**
Representation of filing

**This filing is Completed**
File Number : 08903479
File Date : 18-DEC-2007

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
**12117183** **17-MAY-2007**

1b. This FINANCING STATEMENT AMENDMENT is to be filed (for record)(or recorded) in the REAL ESTATE RECORDS ☐

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement

3. ☐ CONTINUATION: effectiveness of the Financing Statement identified above with respect to security Interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7
☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party ☐ DELETE name: Give record name to be deleted in item 6a or 6b ☐ ADD name: Complete item 7a or 7b and also item 7c; also complete items 7e-7g (if applicable)

6. CURRENT RECORD INFORMATION

| 6a. ORGANIZATION NAME | | | |
|---|---|---|---|
| | | | |
| OR 6b. INDIVIDUAL LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

7. CHANGED (NEW) OR ADDED INFORMATION

| 7a. ORGANIZATION NAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| OR 7b. INDIVIDUAL LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 7c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID#, if any | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box
Describe collateral ☐ deleted or ☒ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned

1-201488-1: (1) MATCO MD2009W2 SCANNER, (1) OTC 1590 10-TON BUMPER STACK, S/N A1590-6118, (1) AUTOLOGIC 5 GAS ANALYZER CK310-0111, S/N 6497, (1) MATCO 3820 MC TWO CHANNEL LAB SCOPE, S/N 4568411A,

1-201488-2: (1) PP1515A TEN TON PORTO POWER, (1) SS5150 DELUXE STUD WELDING KIT, (2) SATA NR95 SPRAY GUNS WITH SD6760 FILTERS, (1) A/C UV KIT, (1) TRANS TECH 2 MACHINE, (1) AUTO LIFE OIL FLUSH MACHINE, (1) AUTO LIFE BRAKE FLUID FLUSH MACHINE, (1) SMOKE MACHINE,

1-201488-3: (1) TRUCK N REVOLUTION 18' 2-SLOTTED TOWER AIR FRAME RACK,

1-201488-4: (1) AUTO LIFT, 10 TON FLOOR TOWER,

1-201488-5: (1) 9000LB 2 POST ASYMMETRIC LIFT, S/N 05092964,

1-201488-6: (1) TRUCK N REVOLUTION 18' 2-SLOTTED TOWER AIR FRAME RACK,

1-201488-7: (1) ACCUDRAFT MX440 SIDE DRAFT SINGLE SKIN PAINT BOOTH 24' X 13' X 4 1/2" X 10' 9", (1) 4' BOOTH LENGTH EXT, (1) WIDTH

9. NAME of SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if the is a termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment

| 9a. ORGANIZATION NAME | | | |
|---|---|---|---|
| **MARLIN LEASING CORP** | | | |
| OR 9b. INDIVIDUAL LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

10. OPTIONAL FILER REFERENCE DATA **1-201488-8** **RESTRUCTURE 001-007**
**27619994** **Debtor Name: GRAND AUTO AND TRUCK CENTER LIMITED**

## UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

14. INITIAL FINANCING STATEMENT FILE # (same as item 1a on Amendment form)
12117183

15. NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as item 9 on Amendment form)

15a. ORGANIZATION NAME
**MARLIN LEASING CORP**

OR

| 15b. INDIVIDUAL LAST NAME | FIRST NAME | MIDDLE NAME |
| --- | --- | --- |
| | | |

13.Use this space for additional information

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

EXTENSION TO 16' 4 1/2", (1) DUCT WORK PACKAGE, (1) AIR COMPRESSOR IND SERIES 120 GALLON VERT 3 PHASE WITH STARTER, (1) COMPRESSOR AFTER COOLER, (1) COMPRESSOR START UP KIT,

**PROOF OF CLAIM EXHIBIT "A"**

**Account #002-201488-001**

**GRAND AUTO AND TRUCK CENTER, LIMITED**

| | | |
|---|---|---|
| ***57 monthly payments of $2100.00 each due from 5/20/2008 through end of term*** | **$** | **119,700.00** |
| ***Residual*** | **$** | **1.00** |
| ***Late Charges*** | **$** | **1,260.00** |
| ***State Taxes*** | **$** | **918.75** |
| ***TOTAL CLAIM AMOUNT*** | **$** | **121,879.75** |

leases 1-7 - Rolled into this lease.

# Restructure Booking Sheet

## New Lease Number

001 -0201488 -008

500.00
Fee

**Lessee Name:** Grand Auto Center

| Name | Tasks | Comments | Done |
|---|---|---|---|
| Sherry/Erin | *Book new lease* | | |
| Cheri/Helen | New Terms: | | |
| | 60 pmts @ $ 2100.00 per month | 126,000 | |
| | Equipment Cost=NI on exixting lease | 87,947.97 | |
| | Gross Finance | 38,052.03 | |
| | First Payment Due | 2/20/08 | |
| | Book Lease | | |
| | NPV | .01 | |
| | User Code | 60 | |
| | Region Code = 000 for Marlin Leasing | 000 | |
| | Facility Code | 902 | ✓ |
| | Approval Code | | |
| | Residual/Managers's Residual | 03 1.00 | |
| | Asset/Taxes | | |
| | Summary Message-type 2 | | |
| | Run IRR | | |
| | Type AGE at contract maintenance | | |
| Heike | *Dispose existing Lease* | 001-020148-001-007 | SO ✓ |
| | User code | 60 | SO ✓ |
| | | | |
| Nancy Z | *Documents* | | |
| | Create Collateral File | | ✓ NZ |
| | | | |
| | *Imaging* | | |
| | Change Manila File Number | | |
| | Append New Documents | | |
| | Change IDOX File Number | | |
| | | | |
| | *Treasury* | | |
| | List Old Contract # | | |
| | List Old Facility Code | | |

M. McCarthy
12/19/07

**User Code:**
**Credit=60, Bankruptct=61, Equipment=62**
**Facility Code:**
**Credit Bankruptcy=9.02**
**Equipment=9.00**

s:/servicing/booking/restructure booking cheklist.xls.

001-0201488-008

Change of Terms Lease Addendum

Northeastern Division: 300 Fellowship Road • Mount Laurel, NJ 08054 • phone: 888.479.9111 • fax: 888.479.1100

*Reference:* ____________________

*Lessor:* MARLIN LEASING CORP.

*Lessee:* Grand Auto & Truck Center, LTD

*Lease/App #:* 001-0201488-1, 2, 3, 4, 5, 6, 7

This addendum to Equipment Lease Agreement (the "Addendum") hereby amends the Equipment Lease Agreement by and between Marlin Leasing Corporation ("Marlin") and the above lessee (the "Lessee") with reference to the above referenced equipment lease transaction (the "Lease"). All terms and conditions of the Lease not inconsistent with this Addendum shall be and remain in full force and effect. For good and valuable consideration, receipt of which is hereby acknowledged by Marlin and the Lessee, the parties agree as follows:

Lessee hereby authorizes Lessor to change the following terms and/or conditions of the Lease:

- ☐ Equipment Location
- ☐ Lessee Name
- ☐ Billing Address
- ☐ Equipment Description is being changed or supplemented per the attached rider
- ☐ Payment Amounts
- ☒ Payment Frequency
- ☐ Security Deposit
- ☐ Advance Payments

Other: Deferral of 3 months approved (November thru January)

$500 Deferral Fee, Auto Ach Required

The terms and/or conditions identified above shall now read as follows:

Payments to start February 20, 2008 at $2,100.00 Plus Applicable Taxes

Next Payment due 02/20/2008 for $2,100.00 Plus Applicable Taxes - 60 Payments remain.

The parties intend and agree that a carbon copy, photocopy, or facsimile of this document with their copied or facsimilied signature thereon shall be treated as an original, and shall be deemed to be as binding, valid, genuine, and authentic as an original-signature document for all purposes, including all matters of evidence and the "best evidence" rule.

MARLIN LEASING CORP.:

By: [signature]

Signature: [signature]

Name/Title: Kirsma West
*Please print*

LESSEE: Grand Auto & Truck Center, LTD

By: Emmauele Torelli

Signature: [signature]

Name/Title: Emmauele Torelli /President
*Please print*

GUARANTOR(s):

Guarantor #1: Emmauele Torelli
*Please print*

[signature]
*Signature*

Guarantor #2: __________
*Please print*

__________
*Signature*

0103

MARLIN LEASING *Personal Guaranty*

***Lease/App #:*** 001-0201488-008

***Leasing Customer:*** Grand Auto & Truck Center, LTD

***Equipment Description:*** Automotive Equipment

The person(s) signing below intends to be legally bound by this document and understands that it cannot be revoked or cancelled. He/she also understands that he/she is entering into a **personal financial obligation** in favor of Marlin Leasing Corp. ("Marlin"). Each person represents that he/she is one of the owners, officers or directors of the leasing customer or will otherwise benefit from the lease. He/she also knows that Marlin would not enter into the lease without first getting this personal guaranty.

In exchange for Marlin's entering the lease, each person signing below hereby individually, personally, jointly and severally, and absolutely and unconditionally, guarantees to Marlin the prompt payment of all lease payments and other amounts owed by the leasing customer to Marlin, including but not limited to costs of enforcement of the lease and Marlin's attorneys fees. Each person signing below represents that he or she has read the lease and understands all of its terms.

Each person signing below agrees that Marlin may proceed against such person to enforce this guaranty without first proceeding against the leasing customer, and also agrees that this guaranty will be enforceable even if the leasing customer goes out of business or into bankruptcy or otherwise cannot or does not pay. Settlements, renewals, extensions of time and other modifications of the lease shall be binding on each such person signing below. Each person agrees to be subject to suit in the New Jersey courts and agrees that a facsimile of this document and the signature(s) shall be as valid and binding as the original and will be admissible in court as final evidence of this guaranty.

| Signature of Guarantor #1 | Signature of Guarantor #2 *(if any)* | Signature of Guarantor #3 *(if any)* |
|---|---|---|
| 767 Schrooner Lane<br>Elk Grove Village, IL 60007<br>Home Address | Home Address | Home Address |
| 847-895-1477<br>Home Telephone # | Home Telephone # | Telephone # |
| 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<br>Social Security # | Social Security # | Social Security # |

Personal Guaranty 1199

**GRAND AUTO & TRUCK CENTER, LTD**
*FULL LINE OF SERVICE MECHANICAL, BODY WORK*
2427 W. GRAND AVE.,
CHICAGO, IL 60612
(312)243-6600, FAX (312)243-4175

December 7, 2007

Marlin Leasing Corporation

Attention: Keyana

Re: Account No: 001-0201488-001 001-0201488-002 001-0201488-003
001-0201488-004 001-0201488-005 001-0201488-006
001-0201488-007

Due to financial difficulty, we are requesting for all of our leasing contracts to be combined into one lease contract.

Our difficulty began in September of 2007 when I, the owner, Emanuele Torelli, had a heart attach and was out of the office for several months. My partner was unable to maintain financial matters while I was not in attendance. This said partner is no longer working with this company.

In addition to the above health issue, I am opening up a 2nd shop (see account no. 001-0201488-007), and have been unable to obtain a business license due to the ineffectiveness of the landlord, which has placed our ability to accumulate income on a hold. Keep in mind that while I am unable to open the shop for business, I am still under obligation for the rent, bills, leasing equipment, and maintenance for said shop.

I am requesting for a restructure of my leasing contracts so that I may keep in good standings with your corporation, as I intend to secure my financial matters as best I can. Your assistance is greatly appreciated as I have been a loyal customer and plan to stay loyal to your corporation.

If you have any question, please do not hesitate to call.

Thank you,

[signature]

Emanuele Torelli
President

| Pmt | | NI: | |
|---|---|---|---|
| 345.40 | -1 | 2,034 | 52/58 |
| 469.10 | -2 | 4,069 | 40/49 |
| 336.99 | -3 | 9,732 | 27/60 |
| 336.99 | -4 | 1,310 | 7/12 |
| 156.36 | -5 | 1,329 | 3/12 |
| 372.75 | -6 | 14,725 | 3/60 |
| 1245.20 | -7 | 54,744 | 2/60 |
| 40. 3,262.39 | | 87,947 | |

001-0201488-001

**MARLIN LEASING**

# EQUIPMENT LEASE CONTRACT for LEASES UNDER $50,000

Leasing Company ("Lessor", "We" or "Us"): Marlin Leasing Corp.

Marlin Leasing Corp. • 3720 DaVinci Court, Ste 175 • Norcross, GA 30092 • phone 1-800-426-3184 • fax 1-800-636-6570

**Leasing Customer ("You"):**

Company Name (Exact business name): Grand Auto Center, Inc.

Address: 767 Schooner Lane, Elk Grove Village, Illinois 60007 (Street / City / County / State / Zip)

Phone: (847) 895-5108 Fax: Business Type: Corporation

Equipment Location: Same As Above State of Incorporation/Organization: IL

Vendor: Steve Rozhon Matco Tools Address:

Description of Leased Equipment (This should include make, model, serial number): MUST BE COMPLETED

(1) MD2009VV2 scanner (1) OTC 1590 10 Ton Bumper Jack (1) CK310-0111 5 Gas Analyzer (1) 1820MC Two Channel Lab Scope

(1) Berg 3254003 (2) A1570-6118 (3) 46497 (4) B435826A

Payment Schedule: 345 ... R ET

| 60 | 60 | ~~[illegible]~~ | $721.50 | Monthly |
|---|---|---|---|---|
| Lease Term (months) | Total # of Pmts. | Amount of Each Pmt. (plus applicable taxes) | Security Deposit | Pmt. Frequency |

**TERMS OF LEASE**

1. You (the customer) want to acquire the above equipment from the above vendor. You want us (the leasing company) to buy it and then lease it to you. The Lease will not begin until we sign it, and once it starts it will continue for the entire Lease Term stated above. You will unconditionally pay us all amounts due, without any right to reduction or set-off. If we do not receive your payment by its due date, there will be a late fee equal to the greater of $20.00 or 15% of the late amount (or, if less, the maximum amount allowable under applicable law). We may charge you a partial payment to cover the time between delivery and the due date for the first regular payment. No more than 180 days and no less than 30 days prior to the end of the Lease Term, you shall give us written notice of your intention to either return the equipment to us or purchase the equipment by exercising the purchase option we may have given you. Provided you have given such timely notice, you shall, at your cost, return the equipment to us in good working condition in a manner and to a location designated by us, or remit the purchase option. If you fail to so notify us or, having notified us, you fail to return the equipment within 15 days after the end of the Lease Term, or you fail to remit the purchase option, the Lease shall automatically renew for another 12-month period under the same terms and conditions described herein. You agree to reimburse us for any cost we incur to refurbish returned equipment. You agree the security deposit will not bear interest and that we may apply it to any amount owed to us, and should we do so, you agree to restore the security deposit to its original amount. You may request the return of the security deposit only after all of your obligations under this Lease have been met in full. To expedite the Lease, you asked us to accept your faxed signature and have agreed it will be considered as good as your original signature and admissible in court as conclusive evidence of this Lease. You agree to allow us to adjust the payment amount above if the final equipment cost varies from the amount the payment was based upon.

2. You alone selected the vendor and the equipment. You asked us to buy it. We are not related to the vendor and we cannot get a refund, nor is the vendor allowed to waive or modify any term of this Lease. Therefore, the Lease cannot be canceled by you for any reason, even if the equipment fails or is damaged and it is not your fault. We are leasing it to you "as is" and we disclaim all express and implied warranties, including any warranty of merchantability or fitness for a particular purpose. You are responsible for all service. The vendor or manufacturer may have given you warranties. You may contact them to get a statement of those warranties, if any. We assign to you any warranties the vendor may have given us. You shall settle any dispute regarding the equipment's performance directly with the vendor. You promise that the equipment will be used only for business and not for personal, family or household purposes. You will keep and use the equipment only at the above location and shall not remove the equipment from such location or return it to us without our written consent.

3. If you do not pay us as agreed or fail to perform any other term of this Lease, you agree that we may (i) repossess the equipment and/or (ii) directly debit (charge) your bank account(s) and/or sue you for all past due rent and other charges and for all rent due in the future to the end of the Lease Term. You must also pay our legal, collection and other costs and interest on all monies due us. If we do not repossess, we may also directly debit and/or sue you for the "residual" (end of term) equipment value. This Lease will be governed by New Jersey law or the law of the state in which our assignee is located. You agree to be subject to suit in the courts of such state and waive any right to a jury trial. We will have title to the equipment at all times. This is a "true lease" and not a loan or installment sale. If this is later determined not to be a "true lease," you grant us a security interest in the equipment. You give us power of attorney to file UCC financing statements, and we may charge you a fee to cover documentation and other costs. You also agree this is a "Finance lease" under Article 2A of the Uniform Commercial Code ("UCC"). You waive all rights and remedies you may have under the UCC, including those in Sections 2A-508 through 2A-522.

4. You must pay us for all sales, use, property and other taxes and administrative charges relating to your use or our ownership of the equipment. Unless we have given you a written option to buy the equipment at the end of the Lease for $1.00, we will be entitled to all tax benefits (such as depreciation, tax credits, etc.). If you do anything to disallow our getting these benefits, you will promptly indemnify (pay) us an equivalent amount. You will also indemnify us for all claims, suits, liabilities, damages and losses relating to this Lease or the use or ownership of the equipment. This promise will continue even after the Lease has ended. You accept all risks of loss and damage to the equipment. You must keep it insured against all risks of loss in an amount equal to the replacement cost and will have us listed on the policy as the "loss payee." If you do not give us proof of this insurance, we may, at our option, charge you a risk fee or get it insured ourselves and charge you for the cost.

5. Because this Lease is based on your own credit rating, you may not assign (transfer) the Lease or your rights to anyone else. You may not sub-lease or rent the equipment to anyone. We may sell or transfer our interests to another person or company, who will then have all of our rights but none of our obligations. Those obligations will continue to be ours. The rights we pass on to the new person or company will not be subject to any defenses, claims or set-offs you may assert against us.

**Acceptance of Lease Agreement**

This is a binding contract. It cannot be canceled. Read it carefully before signing, and call us if you have any questions.

[signature] E. Trill. — Emanuele Torelli — President — 6-20-03

Signature of Leasing Customer / Print Name of Signer / Title / Date

[signature] — Danielle McCleary — A/C — 06/20/03

Accepted and Signed by MARLIN LEASING CORP. / Print Name of Signer / Title / Date

**Personal Guaranty**

I HEREBY PERSONALLY AND UNCONDITIONALLY GUARANTEE ALL AMOUNTS OWED BY THE LEASING CUSTOMER UNDER THIS LEASE. I AGREE THAT THE LEASING COMPANY MAY EXTEND, TRANSFER AND AMEND THE LEASE AND I AGREE TO BE BOUND BY ALL SUCH CHANGES. I WAIVE ALL NOTICES, INCLUDING NOTICES OF DEMAND AND DEFAULT. I AGREE THE LEASING COMPANY MAY PROCEED AGAINST ME SEPARATELY FROM THE LEASING CUSTOMER. I HAVE AUTHORIZED THE LEASING COMPANY OR ITS DESIGNEE TO USE MY CONSUMER CREDIT REPORTS FROM TIME TO TIME IN ITS CREDIT EVALUATION AND COLLECTION PROCESSES. I CONSENT TO SUIT IN NEW JERSEY COURTS (OR THE COURTS OF THE STATE IN WHICH THE LEASING COMPANY'S ASSIGNEE IS LOCATED) AND I WAIVE TRIAL BY JURY.

GUARANTOR #1 (Print Name): Emanuele Torelli

[signature] E. Trill. — 6-20-03

Signature (Individually, No Title) / Date

GUARANTOR #2 (Print Name):

Signature (Individually, No Title) / Date

**Acceptance of Delivery**

I AM AUTHORIZED TO SIGN THIS CERTIFICATE ON BEHALF OF THE LEASING CUSTOMER. I CERTIFY TO THE LEASING COMPANY THAT THE EQUIPMENT HAS BEEN DELIVERED AND IS FULLY INSTALLED AND WORKING PERFECTLY. I AUTHORIZE THE LEASING COMPANY TO PAY THE VENDOR AND COMMENCE THE LEASE.

[signature] E. Trill. — Emanuele Torelli — 6-20-03

Authorized Signature / Name and Title (Please Print) / Equipment Delivery Date

FROM :RANGEL'S AUTO REPAIR INC. FAX NO. :7087809887 Jun. 25 2004 12:41PM P5

001-0201988-002

MARLIN LEASING

www.marlinleasing.com

# EQUIPMENT LEASE CONTRACT for LEASES UNDER $50,000

Leasing Company ("Lessor", "We" or "Us"): Marlin Leasing Corp.
Southeastern Division - 3720 DaVinci Court, Ste 175 - Norcross, GA 30092 - phone: 888.436.3194 - fax: 800.838.8879
Lease Acceptance Office - 520 Walnut Street, Suite 1150 - Philadelphia, PA 19106 - phone: 800-479-9111 - fax: 800-303-9545

Description of Leased Equipment (include quantity, make, model, serial number and accessories. Attach Schedule if necessary.) MUST BE COMPLETE

(1) PT1515A Ten Ton Porto Power (1) SNS150 Deluxe Stud Welding Kit (2) Sata NR95 Spray Guns with SD6760 Filters (1) A/C UV Kit (1) Trans Tech 3 Machine (1) Auto Life Oil Flush Machine (1) Auto Life Brake Fluid Flush Machine (1) Smoke Machine

Leasing Customer ("You"):

Company Name (Exact business name): Grand Equipment & Truck Center, Ltd. App# 318

Address: 3427 West Grand Avenue, Chicago (City), Cook (County), Illinois (State), 60612 (Zip)

Phone: (312) 226-1500 Fax: - Business Type: Corporation

Equipment Location: Same As Above State of Incorporation/Organization: IL

Vendor: Snavo Rozhon Matco Tools Address: Homer Glen, IL

Payment Schedule:

| Lease Term (months) | Total # of Pmts. | Amount of Each Pmt. (plus applicable taxes) | | Pmt. Frequency |
|---|---|---|---|---|
| 49 | 49 | 1 @ $3,000.00<br>48 @ $469.10 | $3,000.00<br>one advance payment | Monthly |

TERMS OF LEASE

1. You (the customer) want to acquire the above equipment from the above vendor. You want us (the leasing company) to buy it and then lease it to you. This Lease will begin when the equipment is delivered to you and will continue for the entire Lease Term plus any interim rent period. You will unconditionally pay us all amounts due, without any right to set-off. If we do not receive your payment by its due date, there will be a late fee equal to the greater of $20.00 or 15% of the late amount (or, if less, the maximum amount allowable under law) which you agree is a reasonable estimate of the costs we incur with respect to late payments and is not a penalty. Upon your request, we will waive the first assessed late charge. We may charge you a partial payment (interim rent) for the time between delivery and the due date for the first regular payment. We may charge you a one-time documentation fee up to $100. You agree that we may adjust the payment amount above if the final equipment cost varies from the amount the payment was based upon. This Lease is not binding on us until we sign it. To expedite this Lease, you asked us to accept your faxed signature and have agreed it will be considered as good as your original signature and admissible in court as conclusive evidence of this Lease.

2. You must notify us by certified mail between 90 and 180 days prior to the end of the Lease Term if you intend on returning the equipment. If you do not notify us, the Lease will automatically extend for 12 months under the same terms and conditions. If you give us the proper notice, then at the end of the Lease Term you shall return the equipment in good working order in a manner and to a location designated by us. You agree to reimburse us for our costs to refurbish returned equipment. You agree the security deposit will not bear interest and that we may apply it to any amount owed to us, and should we do so, you agree to restore the security deposit to its original amount. You may request the return of the security deposit only after all of your obligations under this Lease have been met in full.

3. You alone selected the vendor and the equipment. You asked us to buy it. We are not related to the vendor and we cannot get a refund, nor is the vendor allowed to waive or modify any term of this Lease. Therefore, the Lease cannot be canceled by you for any reason, even if the equipment fails or is damaged and it is not your fault. We are leasing it to you "as is" and we disclaim all express and implied warranties, including any warranty of merchantability or fitness for a particular purpose. You are responsible for all service. The vendor may have given you warranties. You may contact the vendor to get a statement of those warranties, if any. We assign to you any warranties the vendor may have given us. You shall settle any dispute regarding the equipment's performance directly with the vendor. You promise that the equipment will be used only for business and not for personal, family or household purposes. You will keep and use the equipment only at the above address and not move or return it without our written consent.

4. If you do not pay us as agreed or fail to perform any other term of this Lease, you will be in default and you agree that we may (i) repossess the equipment and/or (ii) directly debit (charge) your bank account(s) and/or sue you for all past due payments and other charges and all payments due in the future to the end of the Lease Term, plus our legal and collection costs. If you are in default and/or do not meet your end of term obligations, we may also directly debit and/or sue you for the "residual" (end of term) equipment value. This Lease shall be governed by the laws of the Commonwealth of Pennsylvania (where we have an office and accepted this Lease). You agree that any suit under this Lease shall be brought in state or federal court in Pennsylvania, and you irrevocably consent and submit to the jurisdiction of such courts. Each party waives any right to a jury trial. We will have title to the equipment at all times. This is a "true lease" and not a loan or installment sale. You grant us a first priority security interest in the equipment and authorize us to file Uniform Commercial Code ("UCC") financing statements (in case this is later determined not to be a "true lease"). You agree this is a "finance lease" under Article 2A of the UCC. You waive all UCC rights and remedies you may have, including those in Sections 2A-508 through 2A-522.

5. You must pay us for all sales, use, property and other taxes (and any penalties) relating to the Lease and the equipment. We may adjust this Lease and the payment above to finance for you any taxes due at Lease inception. We may bill you based on our estimate of the taxes. We may charge you an annual property tax administration fee up to $15. Unless we have given you a written option to buy the equipment at the end of the Lease for $1.00, we will be entitled to all tax benefits. If you do anything to disallow our getting these benefits, you will promptly indemnify (pay) us an equivalent amount. You accept all risks of loss, injury or damage caused by the equipment and shall indemnify us for all suits and other liabilities arising from the same. This indemnity will continue even after the Lease has ended. You must maintain acceptable public liability insurance naming us as "additional insured". You must keep the equipment insured against all risks of loss in an amount equal to the replacement cost and have us listed on the policy as "loss payee." If you do not give us proof of the property insurance, then depending on the original cost of the equipment we may either (i) obtain property insurance to cover our interests and charge you a fee for such coverage or (ii) charge you a monthly non-compliance fee up to $50 (which provides no insurance benefit). You can stop the insurance coverage fee or non-compliance fee at any time by delivering the required proof of insurance.

6. Since this Lease is based on your own credit rating, you may not assign (transfer) the Lease to anyone else. We may sell or transfer our interests to another entity, who will then have all of our rights but none of our obligations. Those obligations will continue to be ours. The rights we pass on to the new entity will not be subject to any defenses, claims or set-offs you may assert against us. Any action by you against us must be commenced within one year after the cause of action arises or be forever barred.

Acceptance of Lease Agreement — This is a binding contract. It cannot be canceled. Read it carefully before signing, and call us if you have any questions.

X [signature] Emanuele Torelli President 6-25

Signature of Leasing Customer — Print Name of Signer — Title — Date

[signature] [signature] 06/29/04

Accepted and Signed by MARLIN LEASING CORP. — Print Name of Signer — Title — Date

Personal Guaranty

I HEREBY PERSONALLY AND UNCONDITIONALLY GUARANTEE ALL AMOUNTS OWED BY THE LEASING CUSTOMER UNDER THIS LEASE. I AGREE THAT THE LEASING COMPANY MAY EXTEND, TRANSFER AND AMEND LEASE AND I AGREE TO BE BOUND BY ALL SUCH CHANGES. I WAIVE ALL NOTICES, INCLUDING NOTICES OF DEMAND AND DEFAULT. I AGREE THE LEASING COMPANY MAY PROCEED AGAINST ME SEPARATELY FROM THE LEASING CUSTOMER. I HAVE AUTHORIZED THE LEASING COMPANY OR ITS DESIGNEE TO USE MY CONSUMER CREDIT REPORTS FROM TIME TO TIME IN ITS CREDIT EVALUATION AND COLLECTION PROCESS. CONSENT TO SUIT IN PENNSYLVANIA COURTS AND I WAIVE TRIAL BY JURY.

GUARANTOR #1 (Print Name): Emanuele Torelli

X [signature] 6-25-04

Signature (Individually; No Titles) — Date

GUARANTOR #2 (Print Name): WAIVED

X

Signature (Individually; No Titles) — Date

Acceptance of Delivery

I AM AUTHORIZED TO SIGN THIS CERTIFICATE ON BEHALF OF THE LEASING CUSTOMER. I CERTIFY TO THE LEASING COMPANY THAT THE EQUIPMENT HAS BEEN DELIVERED AND IS FULLY INSTALLED AND WORKING PROPERLY. I AUTHORIZE THE LEASING COMPANY TO PAY THE VENDOR AND COMMENCE THE LEASE.

X [signature] Emanuele Torelli President 6.25.04

Authorized Signature — Name and Title (Please Print) — Date

MAR 05,2004 19:23 000-000-00000

06/17/2005 01:24 FAX 003/

**MARLIN LEASING.** EQUIPMENT LEASE CONTRACT FOR LEASES UNDER $50,

www.marlinleasing.com

Midwestern Division • 203 North LaSalle Street, Suite 2310 • Chicago, IL 60601 • phone: 866.462.7544 • fax: 866.627.5462
Lease Acceptance Office • 520 Walnut Street, Suite 1150 • Philadelphia, PA 19106 • phone: 800.479.9111 • fax: 800.303.9545

Frame Rack

Company Name (Exact business name): GRAND AUTO AND TRUCK CENTER LIMITED 061-0201488-00

Address: 2427 W GRAND AVE (Street) CHICAGO (City) (County) IL (State)

Phone: 312-243-6600 Fax: 312-243-4176 ☐ Corp. ☐ Limited Liability Corp. ☒ Partnership ☐ Pr

Equipment Location: Same As Above State of Incorporation/Organization: IL

Vendor: Chassis Liner Address: 4126 Minnesota St., Alexandria, MN 56308

**Payment Schedule:**

| 60 | 60 | $ 336.99 | $0.00 | Payment Frequency |
|---|---|---|---|---|
| Lease Term (Mos.) | Total No. of Payments | Amount of Each Payment (plus applicable taxes) | Security Deposit | ☒ Monthly ☐ Quarterly ☐ Other: |

**TERMS OF LEASE**

1. You (the customer) want to acquire the above equipment from the above vendor. You want us (the leasing company) to buy it and then lease it to you. This Lease will begin when the equipment is delivered to you and will continue for the entire Lease Term plus any interim rent period. You will unconditionally pay us all amounts due, without any right to set-off. If we do not receive your payment by its due date, there will be a late fee equal to the greater of $20.00 or 15% of the late amount (or, if less, the maximum amount allowable under law) which you agree is a reasonable estimate of the costs we incur with respect to late payments and is not a penalty. Upon your request, we will waive the first assessed late charge. We may charge you a partial payment (interim rent) for the time between delivery and the due date for the first regular payment. We may charge you a one-time documentation fee up to $100. You agree that we may adjust the payment amount above if the final equipment cost varies from the amount the payment was based upon. This Lease is not binding on us until we sign it. To expedite this Lease, you asked us to accept your faxed signature and have agreed it will be considered as good as your original signature and admissible in court as conclusive evidence of this Lease.
2. You must notify us by certified mail between 90 and 180 days prior to the end of the Lease Term if you intend on returning the equipment. If you do not notify us, the Lease will automatically extend for 12 months under the same terms and conditions. If you give us the proper notice, then at the end of the Lease Term you shall return the equipment in good working order in a manner and to a location designated by us. You agree to reimburse us for our costs to refurbish returned equipment. You agree the security deposit will not bear interest and that we may apply it to any amount owed to us, and should we do so, you agree to restore the security deposit to its original amount. You may request the return of the security deposit only after all of your obligations under this Lease have been met in full.
3. You alone selected the vendor and the equipment. You asked us to buy it. We are not related to the vendor and we cannot get a refund, nor is the vendor allowed to waive or modify any term of this Lease. Therefore, the Lease cannot be canceled by you for any reason, even if the equipment fails or is damaged and it is not your fault. We are leasing it to you "as is" and we disclaim all express and implied warranties, including any warranty of merchantability or fitness for a particular purpose. You are responsible for all service. The vendor may have given you warranties. You may contact the vendor to get a statement of those warranties, if any. We assign to you any warranties the vendor may have given us. You shall settle any dispute regarding the equipment's performance directly with the vendor. You promise that the equipment will be used only for business and not for personal, family or household purposes. You will keep and use the equipment only at the above address and not move or return it without our written consent.
4. If you do not pay us as agreed or fail to perform any other term of this Lease, you will be in default and you agree that we may (i) repossess the equipment and/or (ii) d[…] debit (charge) your bank account(s) and/or sue you for all past due payments a[…] charges and all payments due in the future to the end of the Lease Term, plus [… ] and collection costs. If you are in default and/or do not meet your end of term oblig[…] may also directly debit and/or sue you for the "residual" (end of term) equipment va[…] Lease shall be governed by the laws of the Commonwealth of Pennsylvania ([…] have an office and accepted this Lease). You agree that any suit under this Le[…] be brought in state or federal court in Pennsylvania, and you irrevocably co[…] submit to the jurisdiction of such courts. Each party waives any right to a jury[…] will have title to the equipment at all times. This is a "true lease" and not a loan or [… ] sale. You grant us a first priority security interest in the equipment and authorize u[…] Uniform Commercial Code ("UCC") financing statements (in case this is later determ[…] be a "true lease"). You agree this is a "finance lease" under Article 2A of the UCC. You [… ] UCC rights and remedies you may have, including those in Sections 2A-508 through 2[…]
5. You must pay us for all sales, use, property and other taxes (and any penalties) relat[…] Lease and the equipment. We may adjust this Lease and the payment above to finan[…] any taxes due at Lease inception. We may bill you based on our estimate of the taxes. W[…] charge you an annual property tax administration fee up to $12. Unless we have giv[…] written option to buy the equipment at the end of the Lease for $1.00, we will be entitled t[…] benefits. If you do anything to disallow our getting those benefits, you will promptly [… ] (pay) us an equivalent amount. You accept all risks of loss, injury or damage caus[…] equipment and shall indemnify us for all suits and other liabilities arising from the[…] This indemnity will continue even after the Lease has ended. You must maintain a[…] public liability insurance naming us as "additional insured". You must keep the equ[…] insured against all risks of loss in an amount equal to the replacement cost and have u[…] the policy as "loss payee." If you do not give us proof of the property insurance, then ([…] on the original cost of the equipment we may either (i) obtain property insurance to [… ] interests and charge you a fee for such coverage or (ii) charge you a monthly non-co[…] fee up to $50 (which provides no insurance benefit). You can stop the insurance cover[…] non-compliance fee at any time by delivering the required proof of insurance.
6. Since this Lease is based on your own credit rating, you may not assign (transfer) [… ] to anyone else. We may sell or transfer our interests to another entity, who will then [… ] our rights but none of our obligations. Those obligations will continue to be ours. The[…] pass on to the new entity will not be subject to any defenses, claims or set-offs you may[…] against us. Any action by you against us must be commenced within one year after the c[…] action arises or be forever barred.

**ACCEPTANCE OF LEASE AGREEMENT**

Nick Battaglia Nick Battaglia — Signature of Leasing Customer | E Tall. — Print Name of Signer | President — Title | Date

Accepted and Signed by MARLIN LEASING CORP. | Print Name of Signer | Title | 06-27-05 — Date

**PERSONAL GUARANTY**

I HEREBY PERSONALLY AND UNCONDITIONALLY GUARANTEE ALL AMOUNTS OWED BY THE LEASING CUSTOMER UNDER THIS LEASE. I AGREE THAT THE LEASING COMPANY MAY EXTEND, TRANSFER, AMEND THE LEASE AND I AGREE TO BE BOUND BY ALL SUCH CHANGES. I WAIVE ALL NOTICES, INCLUDING NOTICES OF DEMAND AND DEFAULT. I AGREE THE LEASING COMPANY MAY PROCEED AGAINST ME SEPARATELY FROM THE LEASING CUSTOMER. I HAVE AUTHORIZED THE LEASING COMPANY OR ITS DESIGNEE TO USE MY CONSUMER CREDIT REPORTS FROM TIME TO TIME IN ITS CREDIT EVALUATION COLLECTION PROCESSES. I CONSENT TO SUIT IN PENNSYLVANIA COURTS AND I WAIVE TRIAL BY JURY.

EMMANUEL TORELLI — GUARANTOR #1 (Print Name) | E Tall. — Signature (Individually; No Titles) | 6-17-05 — Date | NICK PATTAGLIA — GUARANTOR #2 (Print Name) | Nick Battaglia — Signature (Individually; No Titles)

**ACCEPTANCE OF DELIVERY**

I AM AUTHORIZED TO SIGN THIS CERTIFICATE ON BEHALF OF THE LEASING CUSTOMER. I CERTIFY TO THE LEASING COMPANY THAT THE EQUIPMENT HAS BEEN DELIVERED AND IS INSTALLED AND WORKING PROPERLY. I AUTHORIZE THE LEASING COMPANY TO PAY THE VENDOR AND COMMENCE THE LEASE.

E Tall. — Authorized Signature | Emmanuele Torelli President — Name and Title (Please Print) | 6-17-05 — Equipment Delivery

2002N-PA-R0603

MAR 05,2004 18:23

03/13/2007 22:42 FAX

001-0201488-004

# EQUIPMENT LEASE CONTRACT FOR LEASES UNDER $50,000

www.marlinleasing.com

**Midwestern Division** · 203 North La Salle Street, Suite 2310 · Chicago, IL 60601 · *phone:* 866.462.7546 · *fax:* 866.627.5462
Lease Acceptance Office · 520 Walnut Street, Suite 1150 · Philadelphia, PA 19106 *phone:* 888.479.9111 · *fax:* 888.479.1100

**DESCRIPTION OF LEASED EQUIPMENT** — MUST BE COMPLETED

Auto Lift

**LEASING CUSTOMER ("YOU")**

Company Name (Exact business name): Grand Auto and Truck Center, Limited # 629140

Address: 2427 W. Grand Ave (Street) Chicago (City) (County) IL (State) 60612 (Zip)

Phone: 3122436600 Fax: ☐ Corp. ☒ Limited Liability Corp. ☐ Partnership ☐ Prop.

Equipment Location: 2427 W. Grand Ave, CHICAGO, IL 60612 State of Incorporation/Organization:

Vendor: Chassis Liner Corp., Address: 4125 Minnesota Ave, Alexandria, MN 56308

| Lease Term (Mos.) | Total No. of Payments | Amount of Each Payment | Security Deposit | Payment Frequency |
|---|---|---|---|---|
| 12 | 12 | $267.00 (plus applicable taxes) | $0.00 | Monthly |

**TERMS OF LEASE**

1. You (the customer) want to acquire the above equipment from the above vendor. You want us (the leasing company) to buy it and then lease it to you. This Lease will begin when the equipment is delivered to you and will continue for the entire Lease Term plus any interim rent period. You will unconditionally pay us all amounts due, without any right to set-off. If we do not receive your payment by its due date, there will be a late fee equal to the greater of $20.00 or 15% of the late amount (or, if less, the maximum amount allowable under law) which you agree is a reasonable estimate of the costs we incur with respect to late payments and is not a penalty. Upon your request, we will waive the first assessed late charge. We may charge you a partial payment (interim rent) for the time between delivery and the due date for the first regular payment. We may charge you a one-time documentation fee up to $100. You agree that we may adjust the payment amount above if the final equipment cost varies from the amount the payment was based upon. This Lease is not binding on us until we sign it. To expedite this Lease, you asked us to accept your faxed signature and have agreed it will be considered as good as your original signature and admissible in court as conclusive evidence of this Lease.

2. (a) Unless we have given you a written option to buy the equipment at the end of the Lease Term for $1.00, you must notify us by certified mail between 90 and 150 days prior to the end of the Lease Term if you intend on returning the equipment. If you do not notify us, the Lease will automatically extend for 12 months under the same terms and conditions. If you give us the proper notice, then at the end of the Lease Term you shall return the equipment in good working order in a manner and to a location designated by us. You agree to reimburse us for our costs to refurbish returned equipment. (b) You agree the security deposit will not bear interest and that we may apply it to any amount owed to us, and should we do so, you agree to restore the security deposit to its original amount. You may request the return of the security deposit only after all of your obligations under this Lease have been met in full.

3. **You alone selected the vendor and the equipment. You asked us to buy it. We are not related to the vendor and we cannot get a refund, nor is the vendor allowed to waive or modify any term of this Lease. Therefore, the Lease cannot be canceled by you for any reason, even if the equipment fails or is damaged and it is not your fault. We are leasing it to you "as is" and we disclaim all express and implied warranties, including any warranty of merchantability or fitness for a particular purpose. You are responsible for all service.** The vendor may have given you warranties. You may contact the vendor to get a statement of those warranties, if any. We assign to you any warranties the vendor may have given us. You shall settle any dispute regarding the equipment's performance directly with the vendor. **You promise that the equipment will be used only for business and not for personal, family or household purposes.** You will keep and use the equipment only at the above address and not move it or return it to us prior to the end of the Lease Term.

4. **If you do not pay us as agreed or fail to perform any other term of this Lease, you will be in default and you agree that we may (i) repossess the equipment and/or (ii) directly debit (charge) your bank account(s) and/or sue you for all past due payments and other charges and all payments due in the future to the end of the Lease Term, plus our legal and collection costs.** If you are in default and/or do not meet your end of term obligations, we may also directly debit and/or sue you for the "residual" (end of term) equipment value. **This Lease shall be governed by the laws of the Commonwealth of Pennsylvania (where we have an office and accepted this Lease). You agree that any suit relating to this Lease shall be brought only in a state or federal court in Pennsylvania, and you irrevocably consent and submit to the jurisdiction of such courts. Each party waives any right to a jury trial.** We will have title to the equipment at all times. This is a "true lease" and not a loan or installment sale. You grant us a first priority security interest in the equipment and authorize us to file Uniform Commercial Code ("UCC") financing statements (in case this is later determined not to be a "true lease"). You agree this is a "finance lease" under Article 2A of the UCC. You waive all UCC rights and remedies you may have, including those in Sections 2A-508 through 2A-522.

5. You must pay us for all sales, use, property and other taxes (and any penalties) relating to the Lease and the equipment. We may adjust this Lease and the payment above to finance for you any taxes due at Lease inception. We may bill you based on our estimate of the taxes. We may charge you an annual property tax administration fee up to $15. Unless we have given you a written option to buy the equipment at the end of the Lease Term for $1.00, we will be entitled to all tax benefits. If you do anything to disallow our getting these benefits, you will promptly indemnify (pay) us an equivalent amount. If we gave you a $1.00 purchase option, we may require you to file all personal property tax returns. You accept all risks of loss, injury or damage caused by the equipment and shall indemnify us for all suits and other liabilities arising from the same. This indemnity will continue even after the Lease has ended. You must maintain acceptable public liability insurance naming us as "additional insured". You must keep the equipment insured against all risks of loss in an amount equal to the replacement cost and have us listed on the policy as "loss payee." If you do not give us proof of the property insurance within 30 days after the Lease commences, then depending on the original equipment cost we may either (i) obtain property insurance to cover our interests and charge you a fee for such coverage (including a monthly administration fee and a profit to us) or (ii) charge you a monthly non-compliance fee up to $50 (which provides no insurance benefit). You can cancel the insurance coverage fee or non-compliance fee at any time by delivering the required proof of insurance.

6. Since this Lease is based on your own credit rating, you may not assign (transfer) the Lease to anyone else. We may sell or transfer our interests to another entity, who will then have all of our rights but none of our obligations. Those obligations will continue to be ours. The rights we pass on to the new entity will not be subject to any defenses, claims or set-offs you may assert against us. Any action by you against us must be commenced within one year after the cause of action arises or be forever barred.

**ACCEPTANCE OF LEASE AGREEMENT** — THIS IS A BINDING CONTRACT. IT CANNOT BE CANCELED. READ IT CAREFULLY BEFORE SIGNING AND CALL US IF YOU HAVE ANY QUESTIONS.

X [signature] Emanuele Tonelli President 3-14-07
Signature of Leasing Customer — Print Name of Signer — Title — Date

[signature] Dineen Anello [signature] 3/27/07
Acceptance and Signed by MARLIN LEASING CORP. — Print Name of Signer — Title — Date

**PERSONAL GUARANTY**

I HEREBY PERSONALLY AND UNCONDITIONALLY GUARANTEE ALL AMOUNTS OWED BY THE LEASING CUSTOMER UNDER THIS LEASE. I AGREE THAT THE LEASING COMPANY MAY EXTEND, TRANSFER AND AMEND THE LEASE AND I AGREE TO BE BOUND BY ALL SUCH CHANGES. I WAIVE ALL NOTICES, INCLUDING NOTICES OF DEMAND AND DEFAULT. I AGREE THE LEASING COMPANY MAY PROCEED AGAINST ME SEPARATELY FROM THE LEASING CUSTOMER. I HAVE AUTHORIZED THE LEASING COMPANY OR ITS DESIGNEE TO USE MY CONSUMER CREDIT REPORTS FROM TIME TO TIME IN ITS CREDIT EVALUATION AND COLLECTION PROCESSES. I AGREE THAT ANY SUIT RELATING TO THIS LEASE SHALL BE BROUGHT ONLY IN A STATE OR FEDERAL COURT IN PENNSYLVANIA AND I IRREVOCABLY CONSENT AND SUBMIT TO THE JURISDICTION OF SUCH COURTS, AND I WAIVE TRIAL BY JURY.

GUARANTOR #1 (Print Name) X Signature (Individual, No Titles) Date — GUARANTOR #2 (Print Name) X Signature (Individual, No Titles) Date

**ACCEPTANCE OF DELIVERY**

I AM AUTHORIZED TO SIGN THIS CERTIFICATE ON BEHALF OF THE LEASING CUSTOMER. I CERTIFY TO THE LEASING COMPANY THAT THE EQUIPMENT HAS BEEN DELIVERED AND IS FULLY INSTALLED AND WORKING PROPERLY. I AUTHORIZE THE LEASING COMPANY TO PAY THE VENDOR AND COMMENCE THE LEASE.

X [signature] Emanuele Tonelli President
Authorized Signature — Name and Title (Please Print) — Equipment Delivery Date

2002N-PA R0304

001-0201488-005

MARLIN LEASING.

# EQUIPMENT LEASE CONTRACT FOR LEASES UNDER $50,000

www.marlinleasing.com

*Midwestern Division* · 203 North La Salle Street, Suite 2310 · Chicago, IL 60601 · *phone*: 888.462.7546 · *fax*: 866.827.5482
*Lease Acceptance Office* · 520 Walnut Street, Suite 1150 · Philadelphia, PA 19106 · *phone*: 888.479.9111 · *fax*: 888.479.1100

Auto Lift

**LEASING CUSTOMER ("YOU")**

Company Name (Exact business name): Grand Auto and Truck Center, Limited # 657576

Address: 2427 W. Grand Ave (Street) Chicago (City) (County) IL (State) 60612 (Zip)

Phone: 3122436600 Fax: ☐ Corp. ☒ Limited Liability Corp. ☐ Partnership ☐ Prop.

Equipment Location: 5701 S. Claremont, CHICAGO, IL 60636 State of Incorporation/Organization:

Vendor: Chassis Liner Corp., Address: 4125 Minnesota Ave, Alexandria, MN 56308

| Lease Term (Mos.) | Total No. of Payments | Amount of Each Payment | Security Deposit | Payment Frequency |
|---|---|---|---|---|
| 12 | 12 | $168.36 (plus applicable taxes) | $0.00 | Monthly |

**TERMS OF LEASE**

1. You (the customer) want to acquire the above equipment from the above vendor. You want us (the leasing company) to buy it and then lease it to you. This Lease will begin when the equipment is delivered to you and will continue for the entire Lease Term plus any interim rent period. You will unconditionally pay us all amounts due, without any right to set-off. If we do not receive your payment by its due date, there will be a late fee equal to the greater of $20.00 or 15% of the late amount (or, if less, the maximum amount allowable under law) which you agree is a reasonable estimate of the costs we incur with respect to late payments and is not a penalty. Upon your request, we will waive the first assessed late charge. We may charge you a partial payment (interim rent) for the time between delivery and the due date for the first regular payment. We may charge you a one-time documentation fee up to $100. You agree that we may adjust the payment amount above if the final equipment cost varies from the amount the payment was based upon. This Lease is not binding on us until we sign it. To expedite this Lease, you asked us to accept your faxed signature and have agreed it will be considered as good as your original signature and admissible in court as conclusive evidence of this Lease.

2. (a) Unless we have given you a written option to buy the equipment at the end of the Lease Term for $1.00, you must notify us by certified mail between 90 and 180 days prior to the end of the Lease Term if you intend on returning the equipment. If you do not notify us, the Lease will automatically extend for 12 months under the same terms and conditions. If you give us the proper notice, then at the end of the Lease Term you shall return the equipment in good working order in a manner and to a location designated by us. You agree to reimburse us for our costs to refurbish returned equipment. (b) You agree the security deposit will not bear interest and that we may apply it to any amount owed to us, and should we do so, you agree to restore the security deposit to its original amount. You may request the return of the security deposit only after all of your obligations under this Lease have been met in full.

3. You alone selected the vendor and the equipment. You asked us to buy it. We are not related to the vendor and we cannot get a refund, nor is the vendor allowed to waive or modify any term of this Lease. Therefore, the Lease cannot be canceled by you for any reason, even if the equipment fails or is damaged and it is not your fault. We are leasing it to you "as is" and we disclaim all express and implied warranties, including any warranty of merchantability or fitness for a particular purpose. You are responsible for all service.The vendor may have given you warranties. You may contact the vendor to get a statement of those warranties, if any. We assign to you any warranties the vendor may have given us. You shall settle any dispute regarding the equipment's performance directly with the vendor. You promise that the equipment will be used only for business and not for personal, family or household purposes.You will keep and use the equipment only at the above address and not move it or return it to us prior to the end of the Lease Term.

4. If you do not pay us as agreed or fail to perform any other term of this Lease, you will be in default and you agree that we may (i) repossess the equipment and/or (ii) directly debit (charge) your bank account(s) and/or sue you for all past due payments and other charges and all payments due in the future to the end of the Lease Term, plus our legal and collection costs. If you are in default and/or do not meet your end of term obligations, we may also directly debit and/or sue you for the "residual" (end of term) equipment value.This Lease shall be governed by the laws of the Commonwealth of Pennsylvania (where we have an office and accepted this Lease). You agree that any suit relating to this Lease shall be brought only in a state or federal court in Pennsylvania, and you irrevocably consent and submit to the jurisdiction of such courts. Each party waives any right to a jury trial. We will have title to the equipment at all times. This is a "true lease" and not a loan or installment sale. You grant us a first priority security interest in the equipment and authorize us to file Uniform Commercial Code ("UCC") financing statements (in case this is later determined not to be a "true lease"). You agree this is a "finance lease" under Article 2A of the UCC. You waive all UCC rights and remedies you may have, including those in Sections 2A-508 through 2A-522.

5. You must pay us for all sales, use, property and other taxes (and any penalties) relating to the Lease and the equipment. We may adjust this Lease and the payment above to finance for you any taxes due at Lease inception. We may bill you based on our estimate of the taxes. We may charge you an annual property tax administration fee up to $15. Unless we have given you a written option to buy the equipment at the end of the Lease Term for $1.00, we will be entitled to all tax benefits. If you do anything to disallow our getting these benefits, you will promptly indemnify (pay) us an equivalent amount. If we gave you a $1.00 purchase option, we may require you to file all personal property tax returns.You accept all risks of loss, injury or damage caused by the equipment and shall indemnify us for all suits and other liabilities arising from the same. This indemnity will continue even after the Lease has ended. You must maintain acceptable public liability insurance naming us as "additional insured". You must keep the equipment insured against all risks of loss in an amount equal to the replacement cost and have us listed on the policy as "loss payee." If you do not give us proof of the property insurance within 30 days after the Lease commences, then depending on the original equipment cost we may either (i) obtain property insurance to cover our interests and charge you a fee for such coverage (including a monthly administration fee and a profit to us) or (ii) charge you a monthly non-compliance fee up to $50 (which provides no insurance benefit). You can cancel the insurance coverage fee or non-compliance fee at any time by delivering the required proof of insurance.

6. Since this Lease is based on your own credit rating, you may not assign (transfer) the Lease to anyone else. We may sell or transfer our interests to another entity, who will then have all of our rightsbut none of our obligations.Those obligations will continue to be ours. The rights we pass on to the new entity will not be subject to any defenses, claims or set-offs you may assert against us. Any action by you against us must be commenced within one year after the cause of action arises or be forever barred.

**ACCEPTANCE OF LEASE AGREEMENT**

X [signature] Emanuele Torelli President 7-23-07
Signature of Leasing Customer — Print Name of Signer — Title — Date

[signature] 07-23-07
Accepted and Signed by MARLIN LEASING CORP. — Print Name of Signer — Title — Date

**PERSONAL GUARANTY**

I HEREBY PERSONALLY AND UNCONDITIONALLY GUARANTEE ALL AMOUNTS OWED BY THE LEASING CUSTOMER UNDER THIS LEASE. I AGREE THAT THE LEASING COMPANY MAY EXTEND, TRANSFER AND AMEND THE LEASE AND I AGREE TO BE BOUND BY ALL SUCH CHANGES. I WAIVE ALL NOTICES, INCLUDING NOTICES OF DEMAND AND DEFAULT. I AGREE THE LEASING COMPANY MAY PROCEED AGAINST ME SEPARATELY FROM THE LEASING CUSTOMER. I HAVE AUTHORIZED THE LEASING COMPANY OR ITS DESIGNEE TO USE MY CONSUMER CREDIT REPORTS FROM TIME TO TIME IN ITS CREDIT EVALUATION AND COLLECTION PROCESSES. I AGREE THAT ANY SUIT RELATING TO THIS LEASE SHALL BE BROUGHT ONLY IN A STATE OR FEDERAL COURT IN PENNSYLVANIA AND I IRREVOCABLY CONSENT AND SUBMIT TO THE JURISDICTION OF SUCH COURTS, AND I WAIVE TRIAL BY JURY.

Torelli, Emanuele X [signature] 7-23-07 X
GUARANTOR #1 (Print Name) — Signature (Individual, No Titles) — Date — GUARANTOR #2 (Print Name) — Signature (Individual, No Titles) — Date

**ACCEPTANCE OF DELIVERY**

I AM AUTHORIZED TO SIGN THIS CERTIFICATE ON BEHALF OF THE LEASING CUSTOMER. I CERTIFY TO THE LEASING COMPANY THAT THE EQUIPMENT HAS BEEN DELIVERED AND IS FULLY INSTALLED AND WORKING PROPERLY. I AUTHORIZE THE LEASING COMPANY TO PAY THE VENDOR AND COMMENCE THE LEASE.

X [signature] Emanuele Torelli President
Authorized Signature — Name and Title (Please Print) — Equipment Delivery Date

2007H-PA-R0304

001-0201488-006

**MARLIN LEASING.**

# EQUIPMENT LEASE CONTRACT FOR LEASES UNDER $50,000

www.marlinleasing.com

*Midwestern Division* · 303 North La Salle Street, Suite 2310 · Chicago, IL 60601 · *phone:* 866.483.7546 · *fax:* 866.827.5482
*Lease Acceptance Office* · 520 Walnut Street, Suite 1150 · Philadelphia, PA 19106 · *phone:* 866.479.9111 · *fax:* 888.479.1100

Frame Lift/ Machine

**LEASING CUSTOMER ("YOU")**

Company Name (Exact business name): Grand Auto and Truck Center, Limited # 647476

Address: 2427 W. Grand Ave (Street) Chicago (City) (County) IL (State) 60612 (Zip)

Phone: 3122436600 Fax: ☐ Corp. ☒ Limited Liability Corp. ☐ Partnership ☐ Prop.

Equipment Location: 5701 S. Claremont, CHICAGO, IL 60636 State of Incorporation/Organization: ____

Vendor: Chassis Liner Corp., Address: 4125 Minnesota Ave, Alexandria, MN 56308

| Lease Term (Mos.) | Total No. of Payments | Amount of Each Payment | Security Deposit | Payment Frequency |
|---|---|---|---|---|
| 60 | 60 | $372.75 (plus applicable taxes) | $0.00 | Monthly |

**TERMS OF LEASE**

1. You (the customer) want to acquire the above equipment from the above vendor. You want us (the leasing company) to buy it and then lease it to you. This Lease will begin when the equipment is delivered to you and will continue for the entire Lease Term plus any interim rent period. You will unconditionally pay us all amounts due, without any right to set-off. If we do not receive your payment by its due date, there will be a late fee equal to the greater of $20.00 or 15% of the late amount (or, if less, the maximum amount allowable under law) which you agree is a reasonable estimate of the costs we incur with respect to late payments and is not a penalty. Upon your request, we will waive the first assessed late charge. We may charge you a partial payment (interim rent) for the time between delivery and the due date for the first regular payment. We may charge you a one-time documentation fee up to $100. You agree that we may adjust the payment amount above if the final equipment cost varies from the amount the payment was based upon. This Lease is not binding on us until we sign it. To expedite this Lease, you asked us to accept your faxed signature and have agreed it will be considered as good as your original signature and admissible in court as conclusive evidence of this Lease.

2. (a) Unless we have given you a written option to buy the equipment at the end of the Lease Term for $1.00, you must notify us by certified mail between 90 and 180 days prior to the end of the Lease Term if you intend on returning the equipment. If you do not notify us, the Lease will automatically extend for 12 months under the same terms and conditions. If you give us the proper notice, then at the end of the Lease Term you shall return the equipment in good working order in a manner and to a location designated by us. You agree to reimburse us for our costs to refurbish returned equipment. (b) You agree the security deposit will not bear interest and that we may apply it to any amount owed to us, and should we do so, you agree to restore the security deposit to its original amount. You may request the return of the security deposit only after all of your obligations under this Lease have been met in full.

3. You alone selected the vendor and the equipment. You asked us to buy it. We are not related to the vendor and we cannot get a refund, nor is the vendor allowed to waive or modify any term of this Lease. Therefore, the Lease cannot be canceled by you for any reason, even if the equipment fails or is damaged and it is not your fault. We are leasing it to you "as is" and we disclaim all express and implied warranties, including any warranty of merchantability or fitness for a particular purpose. You are responsible for all service. The vendor may have given you warranties. You may contact the vendor to get a statement of those warranties, if any. We assign to you any warranties the vendor may have given us. You shall settle any dispute regarding the equipment's performance directly with the vendor. You promise that the equipment will be used only for business and not for personal, family or household purposes. You will keep and use the equipment only at the above address and not move it or return it to us prior to the end of the Lease Term.

4. If you do not pay us as agreed or fail to perform any other term of this Lease, you will be in default and you agree that we may (i) repossess the equipment and/or (ii) directly debit (charge) your bank account(s) and/or sue you for all past due payments and other charges and all payments due in the future to the end of the Lease Term, plus our legal and collection costs. If you are in default and/or do not meet your end of term obligations, we may also directly debit and/or sue you for the "residual" (end of term) equipment value. This Lease shall be governed by the laws of the Commonwealth of Pennsylvania (where we have an office and accepted this Lease). You agree that any suit relating to this Lease shall be brought only in a state or federal court in Pennsylvania, and you irrevocably consent and submit to the jurisdiction of such courts. Each party waives any right to a jury trial. We will have title to the equipment at all times. This is a "true lease" and not a loan or installment sale. You grant us a first priority security interest in the equipment and authorize us to file Uniform Commercial Code ("UCC") financing statements (in case this is later determined not to be a "true lease"). You agree this is a "finance lease" under Article 2A of the UCC. You waive all UCC rights and remedies you may have, including those in Sections 2A-508 through 2A-522.

5. You must pay us for all sales, use, property and other taxes (and any penalties) relating to the Lease and the equipment. We may adjust this Lease and the payment above to finance for you any taxes due at Lease inception. We may bill you based on our estimate of the taxes. We may charge you an annual property tax administration fee up to $15. Unless we have given you a written option to buy the equipment at the end of the Lease Term for $1.00, we will be entitled to all tax benefits. If you do anything to disallow our getting these benefits, you will promptly indemnify (pay) us an equivalent amount. If we gave you a $1.00 purchase option, we may require you to file all personal property tax returns. You accept all risks of loss, injury or damage caused by the equipment and shall indemnify us for all suits and other liabilities arising from the same. This indemnity will continue even after the Lease has ended. You must maintain acceptable public liability insurance naming us as "additional insured". You must keep the equipment insured against all risks of loss in an amount equal to the replacement cost and have us listed on the policy as "loss payee." If you do not give us proof of the property insurance within 30 days after the Lease commences, then depending on the original equipment cost we may either (i) obtain property insurance to cover our interests and charge you a fee for such coverage (including a monthly administration fee and a profit to us) or (ii) charge you a monthly non-compliance fee up to $50 (which provides no insurance benefit). You can cancel the insurance coverage fee or non-compliance fee at any time by delivering the required proof of insurance.

6. Since this Lease is based on your own credit rating, you may not assign (transfer) the Lease to anyone else. We may sell or transfer our interests to another entity, who will then have all of our rights but none of our obligations. Those obligations will continue to be ours. The rights we pass on to the new entity will not be subject to any defenses, claims or set-offs you may assert against us. Any action by you against us must be commenced within one year after the cause of action arises or be forever barred.

**ACCEPTANCE OF LEASE AGREEMENT**

X [signature] Emanuele Torelli Pres. 7-23-07
Signature of Leasing Customer — Print Name of Signer — Title — Date

[signature] Melissa Sidebottom AR 07-23-07
Accepted and Signed by MARLIN LEASING CORP. — Print Name of Signer — Title — Date

**PERSONAL GUARANTY**

I HEREBY PERSONALLY AND UNCONDITIONALLY GUARANTEE ALL AMOUNTS OWED BY THE LEASING CUSTOMER UNDER THIS LEASE. I AGREE THAT THE LEASING COMPANY MAY EXTEND, TRANSFER AND AMEND THE LEASE AND I AGREE TO BE BOUND BY ALL SUCH CHANGES. I WAIVE ALL NOTICES, INCLUDING NOTICES OF DEMAND AND DEFAULT. I AGREE THE LEASING COMPANY MAY PROCEED AGAINST ME SEPARATELY FROM THE LEASING CUSTOMER. I HAVE AUTHORIZED THE LEASING COMPANY OR ITS DESIGNEE TO USE MY CONSUMER CREDIT REPORTS FROM TIME TO TIME IN ITS CREDIT EVALUATION AND COLLECTION PROCESSES. I AGREE THAT ANY SUIT RELATING TO THIS LEASE SHALL BE BROUGHT ONLY IN A STATE OR FEDERAL COURT IN PENNSYLVANIA AND I IRREVOCABLY CONSENT AND SUBMIT TO THE JURISDICTION OF SUCH COURTS. I WAIVE TRIAL BY JURY.

Torelli, Emanuele — X [signature] 7-23-07 — X
GUARANTOR #1 (Print Name) — Signature (Individual, No Titles) — Date — GUARANTOR #2 (Print Name) — Signature (Individual, No Titles) — Date

**ACCEPTANCE OF DELIVERY**

I AM AUTHORIZED TO SIGN THIS CERTIFICATE ON BEHALF OF THE LEASING CUSTOMER. I CERTIFY TO THE LEASING COMPANY THAT THE EQUIPMENT HAS BEEN DELIVERED AND IS FULLY INSTALLED AND WORKING PROPERLY. I AUTHORIZE THE LEASING COMPANY TO PAY THE VENDOR AND COMMENCE THE LEASE.

X [signature] Emanuele Torelli Pres.
Authorized Signature — Name and Title (Please Print) — Equipment Delivery Date

2007N-PA-R0304

001-0201488-007

# EQUIPMENT LEASE CONTRACT

Leasing Company ("Lessor", "We" or "Us"): Marlin Leasing Corporation

www.marlinleasing.com

*Midwestern Division* · 203 North La Salle Street, Suite 2310 · Chicago, IL 60601 · *phone:* 888.462.7546 · *fax:* 888.827.5462
*Lease Acceptance Office* · 520 Walnut Street, Suite 1150 · Philadelphia, PA 19106 · *phone:* 888.479.9111 · *fax:* 888.479.1100

DESCRIPTION OF LEASED EQUIPMENT

Auto Paint Booth & Compressors for a New Location

LEASING CUSTOMER ("YOU")

Company Name (Exact business name): Grand Auto and Truck Center, Limited # 6430

Address: 2427 W. Grand Ave (Street) Chicago (City) (County) IL (State) 60612 (Zip)

Phone: 3122436600 Fax: ☐ Corp. ☒ Limited Liability Corp. ☐ Partnership ☐ Prop.

Equipment Location: 2427 W. Grand Ave, CHICAGO, IL 60612 State of Incorporation/Organization:

Vendor: Chassis Liner Corp., Address: 4125 Minnesota Ave, Alexandria, MN 56308

| Lease Term (Mos.) | Total No. of Payments | Amount of Each Payment | Security Deposit | Payment Frequency |
|---|---|---|---|---|
| 60 | 60 | $1,245.20 (plus applicable taxes) | $0.00 | Monthly |

TERMS OF LEASE

**1. REQUEST FOR US TO ACQUIRE EQUIPMENT FOR YOU.** You (the Leasing Customer identified above) wish to acquire certain equipment from the equipment vendor identified above. Rather than purchasing it yourself, you have come to us (Marlin Leasing Corporation) and asked us to purchase it and then lease it back to you. In exchange for our agreement to do this, you have agreed to the terms in this lease agreement (the "Lease"). We have given you an opportunity to discuss and negotiate these terms with us, and the following is the final version of our contract. If there is any information deleted from the above boxes, you give us permission to fill it in. This Lease is not binding on us until we sign it.

**2. THE EQUIPMENT.** We agree to lease to you, and you agree to lease from us, the equipment identified above and on any schedules attached to this Lease. This Lease also covers any and all replacement equipment, add-ons, substitutions or accessories (collectively referred to as the "Equipment"). The other details of the Lease such as the rental amount, the initial Lease term and other matters are set forth in the boxes above.

**3. YOUR SELECTION OF THE EQUIPMENT VENDOR AND THE EQUIPMENT.** You hereby acknowledge and agree that:

(a) YOU SELECTED THE EQUIPMENT VENDOR AND THE EQUIPMENT BASED ON YOUR OWN SKILL AND KNOWLEDGE.

(b) WE DID NOT SELECT OR INSPECT THE EQUIPMENT, HAVE NEVER SEEN THE EQUIPMENT AND HAVE NO EXPERT KNOWLEDGE REGARDING IT.

(c) YOU AGREE THAT THIS LEASE IS A FINANCE LEASE AS DEFINED IN ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE. IT IS ALSO A "TRUE LEASE," MEANING THAT IT IS NOT A "LEASE INTENDED AS SECURITY," A CONDITIONAL SALE, A LOAN OR A SIMILAR ARRANGEMENT.

(d) PRIOR TO EXECUTING THE LEASE, YOU RECEIVED AND APPROVED THE SUPPLY CONTRACT (IF ANY) BETWEEN US AND THE EQUIPMENT VENDOR, AND YOU HAVE BEEN ADVISED IN WRITING (OR ARE NOW ADVISED HEREBY) THAT YOU MAY HAVE RIGHTS AGAINST THE VENDOR UNDER THE SUPPLY CONTRACT (IF ANY) AND THAT YOU MAY CONTACT THE VENDOR FOR INFORMATION ABOUT WHAT YOUR RIGHTS AGAINST THE VENDOR ARE (IF ANY).

**4. NO RIGHT TO CANCEL; OTHER IMPORTANT TERMS OF THE LEASE.** YOU AGREE AS FOLLOWS:

**(a) LEASE CANNOT BE REVOKED; NO "TEST PERIOD."** BECAUSE WE ARE PURCHASING THE EQUIPMENT FOR YOU AT YOUR REQUEST AND CANNOT GET A REFUND, THIS LEASE CANNOT BE CANCELLED OR REVOKED BY YOU FOR ANY REASON AT ANY TIME, INCLUDING BUT NOT LIMITED TO EQUIPMENT FAILURE OR DEFECTS, DAMAGE OR LOSS. THE LEASE CANNOT BE PREPAID EXCEPT WITH OUR PRIOR WRITTEN PERMISSION ON TERMS ACCEPTABLE TO US. THERE IS NO "TEST PERIOD" FOR THE EQUIPMENT.

**b) MARLIN IS NOT RELATED TO MANUFACTURER OR VENDOR; NO CLAIMS TO BE MADE AGAINST MARLIN.** WE ARE NOT RELATED IN ANY WAY TO THE EQUIPMENT MANUFACTURER OR VENDOR. NEITHER THE VENDOR NOR ANYONE ELSE IS AN AGENT OF OURS, AND NO STATEMENT, REPRESENTATION, GUARANTEE OR WARRANTY MADE BY THE VENDOR OR OTHER PERSON IS BINDING ON US OR WILL AFFECT YOUR

*(Agreement continues on reverse side)*

ACCEPTANCE OF LEASE AGREEMENT

X [signature] Emanuele Torelli President 5-10-07
Signature of Leasing Customer — Print Name of Signer — Title — Date

[signature] Rhonda Miller AR 08/06/07
Accepted and Signed by MARLIN LEASING CORPORATION — Print Name of Signer — Title — Date

PERSONAL GUARANTY

IN CONSIDERATION OF MY RECEIVING BENEFIT AND VALUE FROM THE ABOVE LEASE, I (OR WE, IF THERE IS MORE THAN ONE OF US, INDIVIDUALLY, JOINTLY AND SEVERALLY) HEREBY PERSONALLY AND UNCONDITIONALLY GUARANTEE ALL PAYMENTS AND OBLIGATIONS OWED BY THE LEASING CUSTOMER UNDER THIS LEASE, AND I ALSO AGREE TO PAY THE LEASING COMPANY'S LEGAL FEES AND COSTS INCURRED IN ENFORCING THE LEASE AND THIS PERSONAL GUARANTY. I WAIVE NOTICE OF ACCELERATION, DEFAULT, RENEWALS, EXTENSIONS, TRANSFERS, AMENDMENTS AND OTHER CHANGES IN THE TERMS OF THE LEASE AND AGREE THAT I WILL BE BOUND BY ANY AND ALL SUCH CHANGES. I AGREE THE LEASING COMPANY MAY PROCEED AGAINST ME SEPARATELY FROM THE LEASING CUSTOMER. I AGREE THAT ANY SUIT RELATING TO THIS LEASE SHALL BE BROUGHT ONLY IN A STATE OR FEDERAL COURT IN PENNSYLVANIA AND I IRREVOCABLY CONSENT AND SUBMIT TO THE JURISDICTION OF SUCH COURTS, AND I WAIVE TRIAL BY JURY. I AGREE THAT THIS PERSONAL GUARANTY WILL BE BINDING UPON MY HEIRS AND PERSONAL REPRESENTATIVES. I HAVE AUTHORIZED THE LEASING COMPANY OR ITS DESIGNEE TO USE MY CONSUMER CREDIT REPORTS FROM TIME TO TIME IN ITS CREDIT EVALUATION AND COLLECTION PROCESSES.

Torelli, Emanuele — GUARANTOR #1 (Print Name)

X [signature] — Signature (Individual; No Titles) — Date

Battaglia, Nick — GUARANTOR #2 (Print Name)

X [signature] — Signature (Individual; No Titles) — Date

ACCEPTANCE OF DELIVERY

I AM AUTHORIZED TO SIGN THIS CERTIFICATE ON BEHALF OF THE LEASING CUSTOMER. I CERTIFY TO THE LEASING COMPANY THAT THE EQUIPMENT HAS BEEN DELIVERED AND IS FULLY INSTALLED AND WORKING PROPERLY. I HEREBY AUTHORIZE THE LEASING COMPANY TO PAY THE EQUIPMENT VENDOR AND COMMENCE THE LEASE.

X [signature] Emanuele Torelli President
Authorized Signature — Name and Title (Please Print) — Equipment Delivery Date

**TERMS OF LEASE** *(continued)*

OBLIGATIONS TO US. ONLY AN EXECUTIVE OFFICER OF THE LEASING COMPANY IS AUTHORIZED TO WAIVE OR ALTER ANY OF THE TERMS OF THIS LEASE, AND THEN ONLY IN WRITING. IF THE EQUIPMENT FAILS TO OPERATE PROPERLY, OR THE VENDOR OR ANY OTHER PERSON FAILS TO PROVIDE ANY MAINTENANCE OR OTHER SERVICE, YOU WILL MAKE ANY COMPLAINT ONLY AGAINST THE VENDOR OR OTHER PERSON AND NOT AGAINST US (EITHER BY WAY OF A CLAIM, COUNTERCLAIM, DEFENSE OR EXCUSE TO PAYMENT).

**c) MARLIN MAKES NO WARRANTIES.** THE EQUIPMENT IS LEASED BY US TO YOU "AS IS," WHERE IS" AND WITH ANY AND ALL FAULTS. WE HAVE MADE NO STATEMENT, REPRESENTATION, OR WARRANTY REGARDING THE EQUIPMENT. WE DISCLAIM ALL EXPRESS AND IMPLIED WARRANTIES, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. WE SHALL TRANSFER TO YOU ALL EXPRESS WARRANTIES, IF ANY, MADE BY THE EQUIPMENT VENDOR TO US. BUT THIS DOES NOT IMPLY THAT THERE ARE ANY SUCH WARRANTIES. YOU MAY CONTACT THE VENDOR TO GET A STATEMENT OF SUCH WARRANTIES, IF ANY.

**d) BARGAINED FOR WAIVER OF RIGHTS.** YOU WAIVE ANY AND ALL RIGHTS AND REMEDIES YOU HAVE UNDER ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE, INCLUDING SECTIONS 508 THROUGH 522 THEREOF.

**e) DISCLAIMER OF LIABILITY.** WE ARE NOT LIABLE FOR ANY LOSS, DAMAGE (INCLUDING LOST PROFITS, SPECIAL DAMAGES OR INCIDENTAL OR CONSEQUENTIAL DAMAGES) OR INJURY TO YOU, YOUR EMPLOYEES OR ANY OTHER PERSON OR PROPERTY CAUSED BY THE EQUIPMENT.

**5. RENTAL AMOUNT; INTERIM RENT; LATE FEE; DOCUMENTATION FEE.** The monthly or other periodic rent you have agreed to pay is stated above. The rental amount is based on the estimated cost of all the Equipment and it may be adjusted higher or lower if the actual cost of the Equipment is higher or lower than the estimate. You also agree to pay a partial rental payment (interim rent) covering the period between the delivery date and the date the first regular payment is due. If we do not receive your payment by its due date, there will be a late fee equal to the greater of $20.00 or 15% of the late amount (or, if less, the maximum amount allowable under applicable law), which you agree is a reasonable estimate of the costs we incur with respect to late payments and is not a penalty. Upon your request, we will waive the first assessed late charge. We may charge you a one-time documentation fee up to $250.

**6. LEASE COMMENCEMENT AND TERM.** This Lease will commence when the Equipment is delivered to you and will continue for the entire Lease term plus any interim rent period and any renewal term. The monthly (or other periodic) due date will be established by us. The due date for the first regular rental payment will also be established by us; however, it will not be greater than 30 days from the date on which the Equipment was delivered to you.

**7. ADVANCE PAYMENT(S) AND/OR SECURITY DEPOSIT.** You have paid us one or more advance payments and/or a security deposit in the amount(s) indicated above. If the Lease does not commence for reasons other than our own negligence, we may retain such monies to compensate us for our credit and other administrative costs. You agree the security deposit will not bear interest and that we may apply it to any amount owed to us, and should we do so, you agree to restore the security deposit to its original amount. You may request the return of the security deposit only after all of your obligations under the Lease have been met in full.

**8. EQUIPMENT DELIVERY.** You understand and agree that we are not responsible for packaging, delivery, installation or testing of the Equipment. You (and/or the Vendor, if you have made such arrangements with the Vendor) are responsible for all such matters. You agree that you will not have any complaint against us if the Vendor or any other person improperly packages the Equipment or delays in delivering or installing it.

**9. USE OF THE EQUIPMENT.** YOU REPRESENT TO US THAT THE EQUIPMENT WILL BE USED ONLY FOR COMMERCIAL, BUSINESS OR AGRICULTURAL PURPOSES, AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES. In addition, you agree not to attach the Equipment to any realty or otherwise permit it to become a "fixture" to real estate or a structure thereon, nor will you trade it in, make alterations to it, sell or dispose of it without our prior written permission. You shall not allow any liens or encumbrances (for example, a mechanic's lien) to be placed on the Equipment. You will keep and use the Equipment only at the address listed above and will not move it or return it prior to the end of the Lease term.

**10. MAINTENANCE AND SERVICE.** You agree that we are not responsible for maintenance, repairs or service to the Equipment. You agree to use the Equipment strictly in the manner for which it is intended by the manufacturer, and you shall maintain the Equipment in good operating order. At the end of the term of the Lease, unless you have been given a written option to purchase the Equipment and you make the purchase, you will be liable for all damage or distress to the Equipment.

**11. LEASE ASSIGNMENT; SUBLEASE OF EQUIPMENT.** THIS LEASE WAS MADE TO YOU BASED ON YOUR OWN CREDIT. THEREFORE YOU AGREE THAT YOU MAY NOT ASSIGN, TRANSFER OR SELL ANY OF YOUR RIGHTS OR INTERESTS UNDER THE LEASE TO ANY OTHER PERSON OR ENTITY, NOR MAY YOU SUBLEASE OR RENT ANY OF THE EQUIPMENT TO ANY OTHER PERSON OR ENTITY. HOWEVER, YOU AGREE THAT WE MAY ASSIGN, TRANSFER, SELL, PLEDGE OR OTHERWISE ENCUMBER ANY OR ALL OF OUR RIGHTS AND INTERESTS UNDER THIS LEASE (INCLUDING OUR RIGHTS AND INTERESTS IN THE EQUIPMENT) TO ANY OTHER PERSON OR ENTITY (INCLUDING A BANK OR OTHER SECURED PARTY OR A BUYER) (COLLECTIVELY, A "THIRD PARTY") WITHOUT PRIOR NOTICE TO YOU. SUCH THIRD PARTY MAY ALSO ASSIGN, TRANSFER, SELL, PLEDGE OR OTHERWISE ENCUMBER ITS RIGHTS AND INTERESTS. IN THIS EVENT, YOU AGREE THAT SUCH THIRD PARTY, OR ITS ASSIGNEE OR TRANSFEREE, WILL RECEIVE ALL THE RIGHTS AND INTERESTS WE HAD UNDER THE LEASE BUT NONE OF OUR OBLIGATIONS OR LIABILITIES, IF ANY. WE WILL CONTINUE TO BE RESPONSIBLE FOR ALL SUCH LIABILITIES AND WILL RETAIN AND HONOR ALL SUCH OBLIGATIONS, IF ANY. YOU PROMISE AND AGREE THAT YOU WILL NOT ASSERT ANY CLAIMS, COUNTERCLAIMS, DEFENSES OR SETOFFS AGAINST SUCH THIRD PARTY. YOU HEREBY ACKNOWLEDGE THAT ANY TRANSFER OF OUR RIGHTS AND/OR INTERESTS TO A THIRD PARTY WOULD NOT MATERIALLY CHANGE YOUR OBLIGATIONS UNDER THE LEASE OR INCREASE YOUR RISKS.

**12. DAMAGE TO EQUIPMENT; RISK OF LOSS OF EQUIPMENT; INSURANCE.** You agree that we are not liable or responsible for any damage to the Equipment, or any loss of or casualty to the Equipment from any cause whatsoever. NO SUCH DAMAGE, CASUALTY OR LOSS WILL AFFECT YOUR RESPONSIBILITIES AND OBLIGATIONS UNDER THE LEASE. You must maintain acceptable public liability insurance naming us as "additional insured". You must keep the Equipment insured against all risks of loss in an amount equal to the replacement cost and have us listed on the policy as "loss payee." If you do not give us proof of the property insurance within 30 days after the Lease commences, then depending on the original cost of the Equipment we may either (i) obtain property insurance to cover our interests and charge you a fee for such coverage (including a monthly administration fee and a profit to us) or (ii) charge you a monthly non-compliance fee up to $80 (which provides no insurance benefit). You can cancel the insurance coverage fee or non-compliance fee at any time by delivering the required proof of insurance.

**13. TAXES AND CERTAIN FEES RELATING TO THE LEASE OF THE EQUIPMENT.** You agree and understand that the amounts we are charging you to rent the Equipment do NOT cover taxes, governmental fees and similar types of costs. Accordingly, you agree to pay us upon demand for all taxes (including but not limited to sales, property, use and other taxes), administrative costs and other charges and fees relating to this Lease or to the use or ownership of the Equipment. We may adjust this Lease and the monthly (or other periodic) payment amount to finance for you any taxes due at Lease inception. We may bill you based on our estimate of the taxes. We may charge you an annual property tax administration fee up to $15. If we gave you a $1.00 purchase option, we may require you to file all personal property tax returns.

**14. TITLE TO THE EQUIPMENT.** You agree that the Equipment is and will remain throughout the term of the Lease solely our property. We will have title to the Equipment throughout the term, and this is a "true lease." You hereby grant us a first priority security interest in the Equipment and you authorize us and our agents to file Uniform Commercial Code Financing Statements recording such security interest (in case this is later determined not to be a "true lease").

**15. YOUR REPRESENTATIONS TO US.** The person signing this Lease on behalf of the leasing customer hereby represents and warrants to the leasing company that: This Lease has been authorized by any and all action required of the corporation, partnership, limited liability company or other form of business (whichever applies in your case), and no consent of any other person or entity is necessary; the lessee entity has complete power to enter into this Lease, and the person signing on behalf of the lessee has been authorized to do so; the Lease is a legal, valid and binding obligation of the lessee entity, and enforceable against the lessee in accordance with its terms; all factual statements made in this Lease and all other information supplied to us by the lessee entity or your representatives, is accurate and complete in all material respects.

**16. DEFAULT DEFINED.** You will be in default under this Lease if any of the following events occur: (a) you fail to make any rental payment or pay any other amount due under this Lease by its due date; (b) you fail to comply with any other term or condition of this Lease or any other agreement between us, or fail to perform any obligation imposed upon you relating to this Lease or any such other agreement; or (c) you become deceased (if the lessee entity under this Lease is one or more natural persons), go out of business, admit your inability to pay your debts as they fall due, become insolvent, make an assignment for the benefit of your creditors, file (or have filed against you) a petition in bankruptcy, a trustee or receiver of your business assets is appointed, or you sell all or substantially all of such assets.

**17. OUR REMEDIES UPON DEFAULT.** In the event you default under this Lease, as defined above, we will have the right to take ANY OR ALL of the following actions, in addition to any and all other remedies that may be available to us under law:

(a) terminate the Lease without prior notice or warning to you.

(b) directly debit (charge) your bank account(s) and/or file a lawsuit against you to collect all past due rent AND ALL RENT THAT WILL BECOME DUE IN THE FUTURE DURING THE UNEXPIRED TERM, plus the "residual value" of the Equipment as determined by us in our sole but reasonable judgment, plus all other fees, charges or amounts that are then due. You agree to pay all of our reasonable legal costs, including but not limited to reasonable attorney's fees, and reasonable overhead for employee time spent on preparing for suit or attempting to collect payments.

(c) repossess the Equipment or apply to a court for an order allowing repossession. In this event, you agree that, after the Equipment is repossessed, you will have no further rights in the Equipment, and you agree we may resell, re-lease or otherwise remarket the Equipment without notice to you. You agree (and you waive any rights that may provide to the contrary) that we will NOT be required to repossess, resell, re-lease or otherwise remarket the Equipment at any time, and that our failure to do so will not affect our other rights of collection and other rights under this Lease or under law.

**18. PERSONAL JURISDICTION OVER YOU IN PENNSYLVANIA, AND PLACE FOR ANY LAWSUIT.** You hereby acknowledge that this Lease was accepted by us in Pennsylvania, where we maintain an office, and it did not take effect until we received the executed legal documents in our Pennsylvania office. Accordingly, YOU AGREE THAT THIS LEASE SHALL BE GOVERNED BY THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA. YOU AGREE THAT ANY SUIT RELATING TO THIS LEASE SHALL BE BROUGHT ONLY IN A STATE OR FEDERAL COURT IN PENNSYLVANIA, AND YOU IRREVOCABLY CONSENT AND SUBMIT TO THE JURISDICTION OF SUCH COURTS. EACH PARTY WAIVES ANY RIGHT TO A JURY TRIAL. Any action by you against us must be commenced within one year after the cause of action arises or be forever barred.

**19. TAX BENEFITS BELONG TO LEASING COMPANY.** The following applies to this Lease UNLESS, at the commencement of this Lease, we execute and deliver to you a document signed by an executive officer of Marlin giving you the option at the end of the Lease term to purchase the Equipment for one dollar ($1.00): For all state, federal and local tax purposes, we (or our successors and assigns) are the sole owner of the Equipment and we are entitled to all tax benefits relating to the Equipment, including but not limited to tax credits, depreciation and deductions. You agree not to do anything that is inconsistent with our ownership of the Equipment. You agree not to claim to be the owner of the Equipment on any tax returns or in any other document or for any other purpose. IF YOU DO ANYTHING OR FILE ANYTHING THAT CAUSES US TO LOSE ANY SUCH TAX BENEFIT CONTEMPLATED ABOVE, OR IF WE SUFFER ANY HARM, DAMAGE, COST, LOSS, LIABILITY (FOR EXAMPLE, IF INTEREST OR TAX PENALTIES ARE IMPOSED AGAINST US), OR IF ANY SUIT OR PROCEEDING IS BROUGHT AGAINST US, ARISING OUT OF YOUR BREACH OF ANY OF THE AGREEMENTS YOU HAVE MADE IN THIS SECTION, YOU AGREE TO HOLD US HARMLESS, DEFEND US AND INDEMNIFY (REIMBURSE OR PAY) US WITH RESPECT TO THE AMOUNT OF SUCH LOST BENEFITS OR OTHER DAMAGE, LOSS, COST (INCLUDING REASONABLE ATTORNEYS FEES) OR LIABILITY. THIS DUTY TO INDEMNIFY US SHALL SURVIVE THE TERMINATION OF THIS LEASE.

**20. OTHER INDEMNIFICATION.** You understand that we have no control over your use of the Equipment and, in any event, for the amount of rent we are charging we cannot agree to accept any financial, liability or other risks relating to the use or ownership of the Equipment. Accordingly, you agree to hold us harmless, indemnify (pay or reimburse) and defend us against all claims, liabilities, losses, suits, proceedings, damages, costs (including reasonable legal fees) relating to this Lease or to the use or ownership of the Equipment, including but not limited to claims for death or injury to persons and claims for property damage. This duty to indemnify shall survive the termination of this Lease.

**21. RETURN OF THE EQUIPMENT; RENEWAL.** Unless we have given you a written option to buy the Equipment at the end of the Lease term for $1.00, you must notify us by certified mail between 90 and 180 days prior to the end of the Lease term if you intend on returning the Equipment. If you do not notify us, the Lease will automatically extend for 12 months under the same terms and conditions. If you give us the proper notice, then at the end of the Lease term you shall return the Equipment in good working order in a manner and to a location designated by us. You agree to reimburse us for our costs to refurbish returned Equipment.

**AS A CONVENIENCE TO YOU (THE LEASING CUSTOMER) AND TO FURTHER EXPEDITE THIS TRANSACTION FOR YOU, WE (MARLIN) AND YOU HAVE AGREED THAT A PHOTOCOPY OR FACSIMILE OF THIS LEASE WHICH INCLUDES A PHOTOCOPY OR A FACSIMILE OF THE SIGNATURES OF BOTH PARTIES SHALL BE AS VALID, AUTHENTIC AND LEGALLY BINDING AS THE ORIGINAL VERSION FOR ALL PURPOSES AND SHALL BE ADMISSIBLE IN COURT AS FINAL AND CONCLUSIVE EVIDENCE OF THIS TRANSACTION AND OF THE EXECUTION OF THE DOCUMENT.**



*Addendum to Equipment Lease*

Midwestern Division: 203 North La Salle Street, Suite 2310 • Chicago, IL 60601 • phone: 866.462.7546 • fax: 866.627.5462

***Reference:***

*Lessor:* Marlin Leasing Corporation

*Lessee:* Grand Auto and Truck Center

*Lease (or App) #:* 643002

This Addendum to Equipment Lease Agreement (the "Addendum") hereby amends the Equipment Lease Agreement by and between Marlin Leasing Corporation ("Marlin") and the above Lessee (the "Lessee") regarding the above referenced equipment lease transaction (the "Lease"). All terms and conditions of the Lease not inconsistent with this Addendum shall be and remain in full force and effect. For good and valuable consideration, receipt of which is hereby acknowledged by Marlin and the Lessee, the parties agree as follows:

Lessee hereby authorizes Lessor to change the following terms and/or conditions of the Lease:

- ☒ Equipment Location
- ☐ Lessee Name
- ☐ Billing Address
- ☐ Equipment Description is being changed or supplemented per the attached rider
- ☐ Other: ______
- ☐ Payment Amounts
- ☐ Payment Frequency
- ☐ Security Deposit
- ☐ Advance Payments

The terms and/or conditions identified above shall now read as follows:
5701 S. Claremont, Chicago, IL 60636

The parties intend and agree that a carbon copy, photocopy, or facsimile of this document with their copied or facsimilied signature thereon shall be treated as an original, and shall be deemed to be as binding, valid, genuine, and authentic as an original signature document for all purposes, including all matters of evidence and the "best evidence" rule.

| ***LESSEE:*** | ***MARLIN LEASING CORPORATION*** |
|---|---|
| By: X [signature] | By: [signature] |
| Signature | Signature |
| Emanuele Tonelli President | Rhonda Miller AR |
| Print Name & Title | Print Name & Title |

*Addendum to Lease*