# PROMISSORY NOTE AND SECURITY AGREEMENT
### Note #: 002-0006997-000

| | | | |
|---|---|---|---|
| Secured Party: | **Sovereign Bank** | Debtor: | Grand Auto and Truck Center, Limited |
| Address: | **3 Huntington Quadrangle Ste 101N** | Address: | 2427 W Grand Ave |
| | **Melville, NY 11747** | | Chicago, IL 60612 |
| Tel: | **631-531-0600** | Tel: | 312-243-6600 |
| | | | |
| Dealer/ | Lynch Chicago Inc | Location of | 2427 W Grand Ave |
| Seller | | Vehicle (if | |
| | 7335 West 100th Place | different) | Chicago, IL 60612 |
| | | | |
| | Bridgeview, IL 60455 | Loan | $ SEE ATTACHED SCHEDULE |
| | | Amount | |

**Equipment Description:**  SEE ATTACHED SCHEDULE

1. <u>Promissory Note.</u>  FOR VALUE RECEIVED, Debtor promises to pay to the order of Secured Party or assigns the Loan Amount plus interest, in installments, payable per the ATTACHED SCHEDULE (S); commencing thirty (30) days after the date of this agreement, or such later date as designated by the Secured Party, and continuing on a like day in each month thereafter. All payments shall be made to the address of Secured Party or such other address designated in writing by Secured Party.

2. <u>Grant of Security Interest.</u>  To secure the prompt payment by Debtor of the Promissory Note and the prompt payment and performance by Debtor of every liability, obligation and indebtedness of Debtor to Secured Party whether now existing or hereafter arising (collectively, the "Obligations"), Debtor hereby grants a security interest to Secured Party in and to the vehicle/equipment described above or on any Schedule annexed hereto (the "Vehicle/Equipment"), together with all related equipment ("Equipment") and all accessions, parts, replacements, substitutions, accessories, attachments and appurtenances in any way used with, attached to or installed in or on the Vehicle or Equipment and all proceeds thereof, including, but not limited to, insurance proceeds (collectively, "Collateral"). Debtor will execute and deliver to Secured Party such state motor vehicle lien applications ("Motor Vehicle Documents") and Uniform Commercial Code financing statements, and all amendments thereto and extensions thereof ("UCC Documents") necessary in Secured Party's sole discretion to perfect or maintain the security interest herein granted.  To the extent permitted by applicable law, Secured Party is authorized to sign and file such Motor Vehicle Documents and UCC Documents as Debtor's attorney-in-fact.

3. <u>Location of Vehicle and/or Equipment.</u>  Debtor will garage the Vehicle and all Equipment and other Collateral at the location set forth above or on any Schedule (the "Location"), and shall not remove the Vehicle from the Location unless Debtor gives Secured Party written notice of such removal and the new location at least thirty (30) days prior to removal and executes such documents as Secured Party requires to continue the perfection of its security interest.

4. <u>Representations And Warranties.</u>  Debtor represents and warrants that:
    4.1      This Agreement and all other agreements and instruments executed in connection herewith are valid and binding upon and enforceable against Debtor in accordance with their respective terms.
    4.2      Debtor has good, indefeasible and merchantable title to and ownership of the Collateral, free and clear of all liens, claims, security interests and encumbrances except those of Secured Party.  The security interest granted by Debtor to Secured Party in the Collateral constitutes a valid first perfected lien and security interest in the Collateral.
    4.3      Debtor is not in violation of any law, statute, regulation or ordinance of any governmental entity or authority, which could in any respect materially and adversely affect the Collateral or Debtor's business, property, assets, operations or condition, financial or otherwise.
    4.4      Debtor is not in default in any material respect under any indenture, loan agreement, mortgage, lease, deed of trust or other similar agreement relating to the borrowing of monies to which Debtor is a party, or by which Debtor or Debtor's assets may be bound.
    4.5      Debtor has delivered to Secured Party Debtor's financial statements as part of Secured Party's credit review.  Such financial statements fully and fairly present the assets, liabilities and financial condition of Debtor as of the respective dates thereof and for the periods covered thereby; there are no omissions of other facts or circumstances which are or may be material and there has been no material adverse change in the financial condition of Debtor or its shareholders since the date of such financial statements.
    4.6      There are no actions or proceedings which are pending or threatened in any court or before any governmental agency or instrumentality against Debtor, its assets, or the Collateral, which may materially adversely affect Debtor or the Collateral.
    4.7      Debtor has filed or has obtained extensions for the filing of all federal, state and local tax returns and other reports it is required by law to file and has paid all taxes, assessments and charges reflected thereon that are due and payable or has reserved funds or made adequate provision for the payment of such taxes, assessments and charges accruing but not yet payable.
    4.8      All Vehicles and Equipment will be used by Debtor solely for its business purposes.
    4.9      All representations and warranties of Debtor are true at the time of Debtor's execution of this Agreement and shall survive the execution, delivery and acceptance hereof.

5. <u>Covenants Of Debtor.</u>  Debtor covenants that:
    5.1      <u>Preservation of Partnership/Corporate Existence.</u>  If Debtor is a partnership or a corporation, it will preserve and maintain its partnership or corporate existence and good standing in each State where it conducts business.
    5.2      <u>Liens.</u>  Debtor will not create or permit to exist any mortgage, pledge, title retention lien, or other lien, encumbrance or security interest with respect to the Collateral, other than encumbrances in favor of Secured Party.
    5.3      <u>Insurance.</u>  Debtor will, at its own expense, keep all of the Collateral insured for its full replacement value thereof against all risks of loss and damage by policies of insurance issued by companies approved by Secured Party, but in no event shall insurance coverage require a deductible in excess of one thousand ($1,000.00) dollars.  Debtor shall also, at its own expense, maintain such liability insurance policy in amount and issued by such company as shall be approved by Secured Party, but in no event shall insurance coverage for: (a) bodily injury liability be in an amount less than five hundred thousand ($500,000.00) dollars; and (b) property damage liability be in an amount less than one hundred thousand ($100,000.00)



dollars. The policies evidencing such insurance shall be duly endorsed in favor of Secured Party and its assigns with such loss payable and additional insured riders as Secured Party may designate and such policies shall be delivered to Secured Party and shall provide for: (a) at least thirty (30) days prior written notice to Secured Party or its assigns of the exercise of any right of cancellation or reduction of coverage; (b) right to cure monetary defaults; and (c) any default, misrepresentation or other breach by Secured Party or Debtor (or others) under the Promissory Note and Security Agreement or the policy will not affect the insurance insofar as the interests of any loss payee are concerned. Should Debtor and its assigns fail to furnish Secured Party with such insurance, Secured Party shall have the right to effect same and charge the cost thereof to Debtor, together with interest thereon at eighteen percent (18%) per annum but in no event more than the maximum rate permitted by law. Such cost, including interest, shall be additional Obligations hereunder and secured by the Collateral. Secured Party's sole obligation hereunder shall be to credit Debtor's account with the net proceeds of any insurance payments received on account of any loss and Secured Party shall have no liability with respect to any loss. Debtor shall (i) file with Secured Party a complete report concerning any accident, damage or theft occurring to the Vehicle within twenty-four (24) hours after said occurrence; (ii) cooperate with Secured Party and any insurers in the investigation, prosecution and defense of all claims resulting from the use or operation of the Vehicle and Equipment, and (iii) take all action necessary to comply with the provisions of any policy of insurance relating to the Vehicle or the operation thereof. Debtor hereby appoints Secured Party as Debtor's attorney in-fact to adjust all insurance claims and endorse all checks and drafts in settlement thereof.

        5.4      Financial Information. Debtor shall prepare and, upon request, furnish to Secured Party such quarterly and annual financial statements and other financial information as Secured Party shall from time to time request.

        5.5      Litigation. Debtor will notify Secured Party in writing, promptly upon learning thereof, of the institution of any suit or administrative proceeding against Debtor with respect to the Collateral, or directly against the Collateral, whether or not the claim is considered by Debtor to be covered by insurance, and of the institution of any suit or administrative proceeding which may materially and adversely affect the operations, financial condition or business of Debtor or Secured Party's security interest in the Collateral.

        5.6      Payment of Taxes and Claims. Debtor will duly pay and discharge when due and payable, all taxes (including, without limitation, all sales taxes), assessments and governmental and other charges, levies or claims levied or imposed, which are, or which if unpaid might become, a lien or charge upon the Collateral or otherwise.

        5.7      Inspection. Debtor will permit Secured Party, its officers, employees and/or agents, at all times, during normal business hours to enter into and upon any premises where the Vehicle and Equipment are located for the purpose of inspecting the Vehicle and Equipment or otherwise protecting the interests of Secured Party therein.

        5.8      Maintenance of Collateral. Debtor will maintain the Collateral in good condition and repair(normal wear and tear excepted) and pay and discharge, or cause to be paid and discharged, when due, the cost of repairs or maintenance, and pay or cause to be paid all rent due on the premises where any Vehicle is located.

        5.9      Landlord and Mortgagee Waivers. If requested by Secured Party, Debtor shall obtain and deliver to Secured Party any and all landlord's and mortgagee's waivers, estoppel, certificates and other similar documents to confirm, among other things, that such persons have no interest in the Collateral.

        5.10    Dispositions of Assets. Debtor shall not sell, convey, assign, lease, abandon or otherwise transfer or dispose of, voluntarily or involuntarily, the Collateral.

        5.11    Compliance with Law; Licenses and Permits. Debtor shall comply with all applicable laws with respect to the Vehicle and its operation and use and permit the Vehicle to be operated only by carefully selected licensed drivers. Debtor shall have and maintain all permits, licenses, consents, authorizations and approvals necessary or desirable for the operation of its business and the use and operation of the Vehicle and Equipment.

        5.12    Registration and Inspection. Debtor shall register the Vehicle in conformity with the laws of the state of operation and shall pay all costs thereof. Debtor shall provide to Secured Party, within sixty (60) days after the date of this Note, a copy of the motor vehicle registration for the Vehicle. If such registration does not contain the proper license plate number of the Vehicle, Debtor will provide such license plate number to Secured Party within such 60-day period. *Failure to provide a copy of such registration and license plate number to Secured Party within such 60-day period shall constitute an Event of Default and shall be subject to Secured Party's rights and remedies under Section 7 of this Promissory Note and Security Agreement.* In all cases, Debtor shall, at its own expense, (a) have the Vehicle (including all Additional Equipment) timely inspected in accordance with all applicable laws and (b) make any and all repairs that are necessary to enable the Vehicle (and such Additional Equipment) to pass such inspections.

      6.      Prepayment. Debtor may prepay the Note in full and not in part on any payment date by payment of an amount equal to (i) all charges and fees then due and owing to Secured Party, (ii) all payments of principal and interest due and owing to Secured Party to the date of prepayment and (iii) the present value of all payments for the then remaining portion of the term hereof discounted at a rate (which Debtor and Secured Party agree is reasonable) equal to the discount rate of the Federal Reserve Bank of New York minus two percent (2%) in effect on the date of this Promissory Note and Security Agreement.

      7.      Events Of Default; Rights And Remedies On Default.

        7.1      Event of Default. The occurrence of any one or more of the following events shall constitute an "Event of Default":

           7.1.1 Debtor fails to pay any installment of the Promissory Note or any other Obligations on the due date thereof;

           7.1.2 Debtor fails to pay any other obligation due Secured Party however arising;

           7.1.3 Debtor fails or neglects to perform or observe any other term, covenant, warranty or representation contained in this Promissory Note and Security Agreement or any other agreement, instrument or document with or for the benefit of Secured Party (other than for the payment of money) and the same is not cured to Secured Party's reasonable satisfaction within ten (10) days after the giving of notice by Secured Party to Debtor of such failure;

           7.1.4 The Collateral or a significant part of Debtor's other assets are attached, seized, levied upon or subjected to a writ or distress warrant, or come within the possession of any receiver, trustee, custodian or assignee for the benefit of creditors, or the Collateral is damaged or destroyed, and in any such case, the same is not cured within thirty (30) days thereafter;

           7.1.5 There shall be a judgment or judgments against Debtor or any guarantor for an amount in excess of $10,000 in the aggregate;

           7.1.6 Any guarantor of the Obligations defaults under or otherwise breaches any of the terms of his, her or its guaranty of the Obligations or any other agreement, instrument or document with or for the benefit of Secured Party or a petition in bankruptcy is filed by or against Guarantor;

           7.1.7 An application is made by Debtor or any person other than Debtor for the appointment of a receiver, trustee or custodian for the Collateral or any other of Debtor's assets and in the case of an application made by a third party, the same is not dismissed within sixty (60) days after the application therefor;

7.1.8  A petition under any provision of the Bankruptcy Code or any similar law or regulation shall be filed by or against Debtor, and in the case of any petition filed by any third party, such petition is not dismissed within forty-five (45) days of such filing, or Debtor makes an assignment for the benefit of its creditors or any case or proceeding is filed by or against Debtor for its dissolution, liquidation, or termination;

7.1.9  Debtor ceases to conduct its business or is enjoined, restrained or in any way prevented by court order from conducting all or any material part of its business affairs;

7.2    Acceleration of the Principal Balance. Upon and after an Event of Default, the entire unpaid balance of payments under the Promissory Note may, at the option of Secured Party and without presentment, demand, notice, protest or legal process of any kind, be declared, and immediately shall become, due and payable.

7.3    Remedies. Upon and after an Event of Default, Secured Party shall have the following rights and remedies:

7.3.1  All of the rights and remedies of a secured party under the Uniform Commercial Code or other applicable law, all of which rights and remedies shall be cumulative, and nonexclusive, to the extent permitted by law, in addition to any other rights and remedies contained in this Agreement;

7.3.2  The right to the extent permitted by law to enter upon the Location and any other premises of Debtor, or any other place or places where the Collateral is located and kept, without any obligation to pay rent to Debtor, through self-help and without judicial process, without first obtaining a final judgment or giving Debtor notice and opportunity for a hearing on the validity of Secured Party's claim, and remove the Collateral therefrom to the premises of Secured Party or any agent of Secured Party, for such time as Secured Party may desire in order to effectively collect or liquidate the Collateral. At Secured Party's request Debtor shall assemble the Collateral and make it available to Secured Party at a place to be designated by Secured Party, in its sole discretion.

7.3.3  The right to sell or otherwise dispose of all or any Collateral in its then condition, or after any further manufacturing or processing thereof at public or private sale or sales, with such notice as may be required by law, in lots or in bulk, for cash or on credit, all as Secured Party, in its sole discretion, may deem advisable; such sales may be adjourned from time to time with or without notice. Secured Party shall have the right to conduct such sales on Debtor's premises or elsewhere and shall have the right to use Debtor's premises without charge for such sales for such time or times as Secured Party may see fit. Secured Party is hereby granted license or other right to use, without charge, Debtor's labels, patents, copyrights, rights of use of any matter, or any property of a similar nature, as it pertains to the Collateral, in advertising for sale and selling any Collateral and Debtor's rights under all licenses and all franchise agreements shall inure to Secured Party's benefit. Secured Party may purchase all or any part of the Collateral at public or, if permitted by law, private, sale and, in lieu of actual payment of such purchase price, may setoff the amount of such price against the Obligations. The proceeds realized from the sale of any Collateral shall be applied first to all costs, expenses and attorney's fees and expenses incurred by Secured Party for collection and enforcement of this Agreement and for acquisition, repair, completion, protection, removal, storage, sale and delivery of the Collateral; second to late charges; third to interest due upon any of the Obligations; and fourth to the principal balance of the Obligations. If any deficiency shall arise, Debtor shall remain liable to Secured Party therefor. If any excess shall arise, it shall be paid over to Debtor.

7.3.4  The right to take such other and further action as Secured Party may at law or in equity be entitled to take.

7.4    Notice. Any notice required to be given by Secured Party of a sale, lease, other disposition of the Collateral or any other intended action by Secured Party, may be given in any manner provided for delivery of notices in this Agreement, ten (10) days prior to such proposed action, and, if so given, shall constitute commercially reasonable and fair notice thereof to Debtor.

8.     Default Interest; Administrative Charges.

8.1    Default Interest. Commencing with the day after any installment hereunder shall have become due and payable (by acceleration or otherwise), such installment or installments (as the case may be) shall bear interest at the rate of eighteen percent (18%) per annum, but not in excess of the maximum rate permitted by law.

8.2    Administrative Charges. If Debtor fails to make any installment within ten (10) days after the same is due, Debtor shall pay a late charge of five percent (5%) of the unpaid installment, but in no event higher than the maximum rate permitted by law, and such amount shall be payable upon demand. Such payment is not interest or for the use of money, but is used to offset Secured Party's administrative costs occasioned by such delay.

8.3    Costs and Expenses. Debtor shall pay (or at Secured Party's option, reimburse Secured Party for) all of Secured Party's fees, costs and expenses (including, but not limited to, attorneys' fees) incurred in connection with the enforcement of this Promissory Note and Security Agreement and the transactions contemplated hereby and the collection of the Obligations (regardless of whether any action is commenced and if so commenced, whether incurred at trial or appeal, and whether incurred prior to or after the bankruptcy of Debtor). Debtor shall also pay (or at Secured Party's option, reimburse Secured Party for) all recording and filing fees and other costs and expenses incurred in connection with the transactions contemplated by this Agreement. Debtor shall pay Secured Party disposition charge of $195.00 at termination as reimbursement for all expenses associated with the release and transfer of liens and title with respect to the specific collateral contained within this Promissory Note and Security Agreement.

9.     Miscellaneous.

9.1    Maximum Rate. Interest charged hereunder shall not exceed the maximum rate permitted by law. Accordingly, if, for any reason, Debtor is required to pay, or has paid, interest at a rate in excess of the highest rate of interest which may be charged by Secured Party or which Debtor may legally contract to pay under applicable law, then the interest rate shall be deemed to be reduced, automatically and immediately, to such maximum rate, and interest payable hereunder shall be computed and paid at such maximum rate and the portion of all prior payments of interest in excess of such maximum rate shall be deemed to have been prepayments of outstanding principal and applied to the installments in the inverse order of their maturities.

9.2    Payments.

9.2.1  All payments under this Agreement shall be made by Debtor to Secured Party at its address set forth above (or such other place as the holder hereof shall designate to Debtor in writing) in lawful money of the United States in immediately available funds and without defense, set-off or counterclaim and without deduction for any present or future income, stamp, sales or other taxes, levies, imposts, deductions, charges or withholdings whatsoever imposed, assessed, levied or collected by or for the benefit of any jurisdiction or taxing authority. In addition, Debtor shall pay any and all taxes (stamp or otherwise) payable or determined to be payable in connection with the execution and delivery of this Promissory Note and Security Agreement, and on all payments to be made by Debtor hereunder (other than Secured Party's income taxes) and all taxes payable in connection with or related to the Collateral.

9.2.2  All payments under the Promissory Note shall be applied first to costs and expenses of Secured Party incurred in connection with this Agreement, second to late charges, third to interest, and fourth to the principal balance and any other amounts due under this Agreement.

9.2.3  Secured Party shall not be deemed to have waived any rights or remedies hereunder or otherwise if it accepts any payment or payments from Debtor, marked payment "in full".

9.3     Further Assurances. Debtor shall at any time and from time to time upon the written request of Secured Party, execute and deliver such further agreements, instruments and documents and do such further acts and things as Secured Party may reasonably request in order to effect the purposes of this Agreement.

9.4     Modification of Agreement. This Agreement may not be modified, altered or amended, except by an agreement in writing signed by Debtor and Secured Party.

9.5     Assignment. Debtor may not sell, assign or transfer this Promissory Note and Security Agreement, or any portion thereof, including, without limitation, Debtor's obligations or duties hereunder. Debtor hereby consents to Secured Party's sale, assignment, transfer or other disposition at any time, of this Note and Security Agreement, its security interest, or any portion thereof, including, without limitation, Secured Party's rights, title, interests, remedies and powers hereunder. To the extent permitted by applicable law, Debtor agrees not raise any claim, defense or offset arising out of this Promissory Note and Security Agreement or otherwise which it may have against Secured Party as a defense, counterclaim or offset to any action by any assignee of Debtor hereunder.

9.6     Waiver by Debtor. Debtor hereby expressly waives presentment for payment, demand for payment, notice of dishonor, protest, notice of protest, notice of non-payment, and all lack of diligence or delays in collection or enforcement of this Agreement.

9.7     Waiver by Secured Party. Secured Party's failure, at any time or times hereafter, to require strict performance by Debtor of any provision of this Agreement shall not waive, affect or diminish any right of Secured Party thereafter to demand strict compliance and performance therewith. Any suspension or waiver by Secured Party of any Event of Default by Debtor under this Agreement shall not suspend, waive or affect any other Event of Default by Debtor under this Agreement, whether the same is prior or subsequent thereto and whether of the same or of a different type. None of the undertakings, agreements, warranties, covenants and representations of Debtor contained in this Agreement and no Event of Default by Debtor under this Agreement shall be deemed to have been suspended or waived by Secured Party, unless such suspension or waiver is by an instrument in writing specifying such suspension or waiver and signed by an officer or other authorized person of Secured Party and directed to Debtor.

9.8     Severability. Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or be invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of this Agreement.

9.9     Parties. This Agreement shall be binding upon and inure to the benefit of the successors and assigns of Debtor (as limited by paragraph 9.5) and Secured Party.

9.10    Governing Law. THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN DELIVERED AT AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAW RULES.

9.11    Venue. DEBTOR IRREVOCABLY CONSENTS THAT ANY LEGAL ACTION OR PROCEEDING AGAINST IT UNDER, ARISING OUT OF OR IN ANY MANNER RELATING TO THIS AGREEMENT, MAY BE BROUGHT IN ANY COURT OF THE STATE OF NEW YORK OR IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK. DEBTOR, BY THE EXECUTION AND DELIVERY OF THIS AGREEMENT, EXPRESSLY AND IRREVOCABLY ASSENTS AND SUBMITS TO THE PERSONAL JURISDICTION OF ANY OF SUCH COURTS IN ANY SUCH ACTION OR PROCEEDING, AND FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF ANY COMPLAINT, SUMMONS, NOTICE OR OTHER PROCESS RELATING TO SUCH ACTION OR PROCEEDING BY DELIVERY THEREOF TO IT BY HAND OR BY MAIL IN THE MANNER PROVIDED FOR IN THIS PROMISSORY NOTE AND SECURITY AGREEMENT. DEBTOR HEREBY EXPRESSLY AND IRREVOCABLY WAIVES ANY CLAIM OR DEFENSE IN ANY SUCH ACTION OR PROCEEDING BASED ON ANY ALLEGED LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS OR ANY SIMILAR BASIS. DEBTOR SHALL NOT BE ENTITLED IN ANY SUCH ACTION OR PROCEEDING TO ASSERT ANY DEFENSE GIVEN OR ALLOWED UNDER THE LAWS OF ANY STATE OTHER THAN THE STATE OF NEW YORK UNLESS SUCH DEFENSE IS ALSO GIVEN OR ALLOWED BY THE LAWS OF THE STATE OF NEW YORK. NOTHING IN THIS AGREEMENT SHALL AFFECT OR IMPAIR IN ANY MANNER OR TO ANY EXTENT THE RIGHT OF SECURED PARTY TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST DEBTOR IN ANY JURISDICTION OR TO SERVE PROCESS IN ANY MANNER PERMITTED BY LAW.

9.12    Waiver of Jury Trial. DEBTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT OR ANY AGREEMENT, INSTRUMENT OR DOCUMENT EXECUTED AND DELIVERED IN CONNECTION HEREWITH OR THEREWITH.

9.13    Notice. Any notice required hereunder shall be in writing, and shall be deemed to have been validly served if delivered by overnight courier, such as Federal Express, with proper postage prepaid, or by hand and addressed to the party to be notified at the address of such party set forth in this Agreement or to such other address as each party may designate for itself by like notice. Such notice shall be deemed received, if sent by overnight courier, the next day, and if sent by hand, upon delivery; provided, however, that notice to the Secured Party shall be deemed given only upon actual receipt.

9.14    Complete Agreement. This Agreement and the other agreements, instruments and documents referred to herein are the complete agreement of the parties with respect to the subject matter hereof and thereof.

9.15    Sections Titles. The Section titles contained in this Agreement are and shall be without substantive meaning or content of any kind whatsoever and are not a part of the agreement between the parties hereto.

IN WITNESS WHEREOF, this Agreement has been duly executed as of the ___ day of __May__ ___.

Debtor: **Grand Auto and Truck Center, Limited**          Secured Party: Sovereign Bank

By :X _____          By: _____

Title: _PRESIDENT_          Title: _____

## SCHEDULE NO 001  OF LOAN AGREEMENT NO. 002-0006997

Dated 5/1/04 _____ between **SOVEREIGN BANK,** General purpose for which vehicles listed and : **Grand Auto and Truck**

Center, Limited     DEBTOR

herein are to be used:

| Year | Make/Model | Vehicle ID # | Body & Addt'l. Equipment | Loan Amount | Initial Payment | Monthly Payment | Rem Pmts | Balloon Payment |
|------|------------|--------------|--------------------------|-------------|-----------------|-----------------|----------|-----------------|
| 2007 | Ford / F-450 | 1FDXF46P47EB43163 | 2007 Vulcan 810 | 57354.83 | | 1270.00 | | |
| | / | | | | | | | |
| | / | | | | | | | |
| | / | | | | | | | |
| | / | | | | | | | |
| | / | | | | | | | |
| | / | | | | | | | |
| | / | | | | | | | |
| | / | | | | | | | |
| | / | | | | | | | |
| | / | | | | | | | |
| | / | | | | | | | |
| | / | | | | | | | |
| | | | TOTALS | 57354.83 | 5677.00 | 1270.00 | 58 | 0.00 |

PRINCIPAL BUSINESS ADDRESS: 2427 W Grand Ave Chicago, IL 60612

GARAGING ADDRESS: 2427 W Grand Ave Chicago, IL 60612

Effective this ___ day of May 2007, this Schedule is hereby made a part of  LOAN AGREMENT No. 002-0006997,

dated 5/1/04 between the parties hereto (and shall  be in addition to any Schedule) now attached to said Agreement.

Debtor: **Grand Auto and Truck Center, Limited**          Secured Party:  Sovereign Bank

By :X _____          By _____

Title: _____          Title: _____

# CERTIFICATE OF CORPORATE DEBTOR AND INCUMBENCY CERTIFICATE

The undersigned hereby certifies to **Sovereign Bank**, and its successors and assigns (collectively, "Secured Party") that (a) he/she is the Secretary or Assistant Secretary of Grand Auto and Truck Center, Limited , a corporation existing under the laws of _____ (the "Corporation"), (b) the following resolutions were duly adopted by the Board of Directors of the Corporation either by unanimous written consent or at a meeting duly held and called, at which meeting a quorum was present and acting throughout, and (c) the same have not been modified or rescinded and are not in conflict with any provision of the certificate of incorporation, bylaws or any agreement of the Corporation:

"RESOLVED, that this Corporation is authorized and empowered to finance and purchase motor vehicles (and related accessories and equipment) and other equipment (collectively, the "Equipment") from, and enter into other financial arrangements and other transactions with, Sovereign Bank, Network Capital Alliance Division ("Secured Party") from time to time (including, without limitation, the financing and purchasing of Equipment, the granting of security interests in property of every description belonging to this Corporation, and the sale of Equipment now or hereafter owned by this Corporation and the financing back of any such Equipment), all such transactions to be on such terms and conditions as may be mutually agreed from time to time between this Corporation and Secured Party, and each and any officer of this Corporation is authorized, in the name and on behalf of this Corporation, to execute and deliver to Secured Party such finance agreements and riders thereto (including but not limited to one or more Promissory Note and Security Agreement), security agreements, chattel mortgages, financing statements, bills of sale and other agreements, instruments and documents in connection with such transactions, and all supplements, amendments, modifications and restatements thereto, as such officer may deem advisable, each containing such terms and conditions as may be approved by the officer executing such document, such officer's execution thereof to be conclusive evidence of such approval and of such officer's authority to do so; and it is further

RESOLVED, that each and any officer of this Corporation is authorized, in the name and on behalf of this Corporation, to execute and deliver to Secured Party such other documents and take such other actions as such officer may deem necessary or advisable to effectuate and perform the transactions contemplated by the foregoing resolution, and the Secretary or any Assistant Secretary of this Corporation is authorized to certify a copy of these resolutions to Secured Party."

The undersigned further certifies that (a) annexed hereto as Exhibits "A" and "B", respectively, are true, correct and complete copies of the certificate of incorporation and bylaws of the Corporation, as amended to date, and (b) set forth below are the names and genuine signatures of certain officers of the Corporation, each of whom is duly elected and qualified, and currently holds the respective office(s) appearing beside such name:

| OFFICE | NAME | SIGNATURE |
|---|---|---|
| President | Emanuele Turelli | x ___ Tull. |
| Vice President | | x |
| Treasurer | | x |
| Secretary | Nick Battaglia | x Nick Battaglia |

Signed and sealed this _____ day of _____, _____.

(Corporate Seal)    x Nick Battaglia
_____ (Secretary)

The undersigned, the _____ of the Corporation, hereby certifies to **Sovereign Bank** that the above is the signature of_____, the duly elected, qualified and currently serving Secretary or Assistant Secretary of the Corporation.

x ___ Tull.
(Officer, other than Secretary )Title:    PRESIDENT

179227-2

# CERTIFICATE OF TITLE OF A VEHICLE

CO2-6997-001

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 1FDXF46P47EB43163 | 2007 | FORD | F450 SUPER DUTY | CAB CHASS | X7162678702 |
| 1FDXF46P47EB43163 | | | | | |

| DATE ISSUED | ODOMETER | CCM | PURCHASED | PURCHASE DATE |
|---|---|---|---|---|
| 06/11/07 | 48 | | NEW | 04/25/07 |

MOBILE HOME SQ FT.

TYPE OF TITLE
**ORIGINAL**

MAILING ADDRESS

SOVEREIGN BANK
3 HUNTINGTON QUADRANGLE STE 101N
MELVILLE NY. 11747-4623

LEGEND(S)
ACTUAL MILEAGE

OWNER(S) NAME AND ADDRESS
GRAND AUTO & TRUCK CENTER
2427 W GRAND AVE
CHICAGO, IL 60612-1415

FIRST LIENHOLDER NAME AND ADDRESS
SOVEREIGN BANK
3 HUNTINGTON QUADRANGLE STE 101N
MELVILLE NY 11747-4623

SECOND LIENHOLDER NAME AND ADDRESS

RELEASE OF LIEN
The holder of a lien on the vehicle described in this certificate does hereby state that the lien is released and discharged.

Signature of Authorized Agent _____ Date ____
Firm Name _____ Signature of Authorized Agent _____ Date ____

NEW LIEN ASSIGNMENT: The information below must be on an application for title and presented to the Secretary of State.
Secured Party _____ Address _____

Federal and state law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

## ASSIGNMENT OF TITLE

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING—ODOMETER DISCREPANCY

☐ NO
☐ TENTHS
ODOMETER READING

If the vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair market value unless this document is accompanied by a salvage application.

Signature(s) of Seller(s)

Printed Name(s) of Seller(s)
I am aware of the above odometer certification made by seller.

DATE OF SALE

Signature(s) of Buyer(s)

Printed Name

I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the abovenamed liens and encumbrances, if any. IN WITNESS WHEREOF I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS, AT SPRINGFIELD.

G03236895

CONTROL NO.

Jesse White
JESSE WHITE, Secretary of State

EXHIBIT
B

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**FIRST REASSIGNMENT DEALER ONLY**

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

NO TENTHS
ODOMETER READING

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING – ODOMETER DISCREPANCY.

Date of Sale _____ Dealer No. _____ Dealer Name _____

I am aware of the above odometer certification made by seller/agent.

Agent's Signature _____ Printed Name (same as signature) _____

Signature of Buyer/Agent _____ Printed Name (same as signature) _____

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

---

**SECOND REASSIGNMENT DEALER ONLY**

[same form repeated]

---

**DEALER ONLY**

[same form repeated]

---

**DEALER ONLY**

[same form repeated]

---

**DEALER ONLY**

[same form repeated]

LIENHOLDER INFORMATION IS REQUIRED ON THE APPLICATION.

VSD 40.22

# PROMISSORY NOTE AND SECURITY AGREEMENT
## DELIVERY AND ACCEPTANCE RECEIPT

*5/1/07*

002-0006997-001

| Secured Party: | **Sovereign Bank** | Debtor: | **Grand Auto and Truck Center, Limited** |
|---|---|---|---|
| Address: | **3 Huntington Quadrangle Ste 101N** | Address: | **2427 W Grand Ave** |
| | **Melville, Ny 11747** | | **Chicago, IL 60612** |
| Tel: | **631-531-0600** | Tel: | **312-243-6600** |

1.     DEBTOR HEREBY ACKNOWLEDGES RECEIPT OF THE MOTOR VEHICLE OR EQUIPMENT described below and/or on any attached schedule (collectively, the "Equipment"), in good working order and condition. Debtor, having made a full inspection thereof, hereby accepts the Equipment as satisfactory and suitable for all purposes of Debtor, in accordance with the terms of the above-referenced Promissory Note and Security Agreement (the "Note") between Secured Party and Debtor. Debtor acknowledges that Secured Party has fully and satisfactorily performed all covenants and conditions to be performed by Secured Party under the Note, and has delivered (or caused to be delivered) the Equipment, which was selected solely by Debtor in accordance with Debtor's directions.

2.     DEBTOR ACKNOWLEDGES THAT THE NOTE IS IRREVOCABLE AND MAY NOT BE CANCELED, TERMINATED OR REVOKED BY DEBTOR DURING THE TERM THEREOF FOR ANY REASON WHATSOEVER. Debtor's obligations to make payments and perform its other obligations under the Note are irrevocable, absolute, unconditional and independent, and shall be paid and performed by Debtor without defense, reduction, abatement, deduction, set-off or counterclaim of any kind whatsoever, and regardless of any inability of Debtor to use the Equipment or any part thereof for any reason, including (without limitation) war, act of God, governmental regulation, strike, loss, damage, destruction, obsolescence, failure of or delay in delivery, failure of the Vehicle to operate properly, termination by operation of law or otherwise.

3.     Debtor represents and warrants that the Equipment was not delivered prior to the date Debtor executed the Note or prior to the Delivery Date set forth below, unless Secured Party shall have previously consented thereto in writing. Debtor understands that Secured Party is relying upon this Receipt as a condition for its making payment to Dealer/Seller (as defined in the Note) for the Vehicle and, by signing this Receipt, Debtor hereby expressly authorizes Secured Party to make such payment to Dealer/Seller.

4.     <u>DEBTOR AGREES THAT SECURED PARTY HAS NOT MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, DIRECTLY OR INDIRECTLY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING (WITHOUT LIMITATION) SECURED PARTY'S TITLE TO OR THE SUITABILITY OF THE EQUIPMENT, ITS DURABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY, CONDITION, CAPACITY, OPERATION, PERFORMANCE; DESIGN, MATERIALS, WORKMANSHIP AND/OR QUALITY, AND AS BETWEEN DEBTOR AND SECURED PARTY OR SECURED PARTY'S ASSIGNEE, DEBTOR FINANCES THE EQUIPMENT "AS IS". DEBTOR AFFIRMS THAT IT HAS NO DEFENSES OR COUNTERCLAIMS AGAINST SECURED PARTY OR SECURED PARTY'S ASSIGNEE IN CONNECTION WITH THE FINANCE.</u>

5.     Description and serial number(s) of Vehicle delivered and accepted:  REFER TO THIS SCHEDULE

    Description of Equipment:  REFER TO THIS SCHEDULE

6.     <u>Date Equipment Accepted:</u> _____, ____

7.     <u>Date of Delivery of Equipment ("Delivery Date"):</u> _*514 2007*_

8.     Debtor hereby authorizes     , to orally verify Debtor's acceptance of the Vehicle.

Debtor: <u>Grand Auto and Truck Center, Limited</u>

By: (X) _____ *T.M.*    *PRESIDENT*
             Name                  Title

**TO DEALER/SELLER: THIS ACCEPTANCE MUST BE SIGNED BY DEBTOR AND RETURNED TO BEFORE YOUR INVOICE CAN BE PROCESSED FOR PAYMENT.**



**EXHIBIT**

*E*